GEORGE WILLIAM ELLENWOOD, II, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ellenwood v. Commissioner
Docket No. 15793-80.
United States Tax Court
T.C. Memo 1982-137; 1982 Tax Ct. Memo LEXIS 607; 43 T.C.M. (CCH) 819; T.C.M. (RIA) 82137; March 22, 1982. George William Ellenwood, II, pro se. F. Michael Kovach, Jr., for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954, [1] and Rule 180, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts the Special Trial Judge's Opinion which is set forth below. *608 OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined a deficiency in petitioner's Federal income tax for 1976 in the amount of $ 264.87. The sole issue for decision is whether petitioner is entitled to exclude from income under section 117 any part of a graduate assistantship stipend received from Wayne State University. [3]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner George William Ellenwood, II (petitioner) resided in Detroit, Michigan when the petition in this case was filed. Petitioner timely filed his Federal income tax return for 1976 with the Internal Revenue Service Center, Covington, Kentucky. During 1976, petitioner was a graduate student in the Department of Romance and Germanic Languages and Literature (the Department) at Wayne State University (the University). He received the following amounts of income under a graduate assistantship *609 (assistantship) in 1976: Graduate Assistant (Winter-Spring)
$ 2,100
Graduate Assistant (Fall)
1,480
$ 3,580
Petitioner attached to his 1976 Federal income tax return a form prepared by the University which characterized as "Excludable income" $ 1,628 of the $ 3,580 stipend received as a result of his assistantship. This figure was computed by deducting from the stipend the claimed "estimated cost of comparable service." In other words, the University calculated that $ 1,952 of the stipend represented compensation for services rendered on the basis that this amount would have been expended to hire a part-time instructor to perform the teaching services rendered by petitioner. The remainder of the stipend was characterized by the University as excludable from taxable income under section 117. Based on the University's calculation, petitioner reported on his 1976 Federal income tax return $ 1,952 of the $ 3,580 he received as a graduate assistant. He excluded the remaining $ 1,628 as a scholarship under section 117. He also reported as income on his return $ 676 received for his services as an instructional assistant and $ 750 received as a part-time faculty *610 member. On his 1976 return, he listed his occupation as "Grad. Teaching Ass't." Petitioner applied for the assistanship the previous year in accordance with University procedures. Petitioner was required to submit copies of his graduate transcripts. He also submitted tapes of his readings in Spanish to show his command of the language. Receipt of the assistantship was conditioned on petitioner agreeing (1) not to accept outside employment during the terms of the assistantship; (2) to teach four courses (sixteen hours) during the three-quarter academic year; and (3) to register for at least six but not more than twelve graduate credit hours per quarter. In addition to the stipend, the University paid petitioner's tuition up to eight credit hours per quarter. The amount of the stipend awarded was based on the academic level of the graduate student, and not on financial need. Students with bachelor degrees were paid at the Graduate Assistant I level, while staudents with masters degrees were paid at the Graduate Assistant II level. Petitioner received none of the University employee benefits except medical insurance. Petitioner fulfilled the assistantship requirements by teaching *611 the requisite number of introductory Spanish courses. He worked from fifteen to twenty hours per week. Although the Department prepared the course syllabi and final examinations (which were standardized throughout the Department), petitioner was responsible for preparing daily lesson plans as well as administering and grading all quizzes and examinations. Petitioner's classes were occasionally monitored by full-time faculty members, and petitioner attended various meetings on improving his teaching techniques. He also provided feedback on the course material to the Department. Petitioner was not graded on his performance as a teacher, but retention of the assistantship was conditioned on maintaining his academic performance in the graduate program. Although teaching was not required to receive his degree, it was recommended for students interested in teaching upon completion of the degree program. OPINION Petitioner contends that he is entitled to exclude, as a scholarship or fellowship grant, the amount of his stipend which exceeded the amount calculated by the University as representing payment for services rendered. Respondent contends that no part of the stipend is excludable *612 from income under section 117. [4]
To qualify for exclusion petitioner must first establish that the stipend was *613 received as a scholarship or fellowship grant within the meaning of section 117. If petitioner does not establish this threshold requirement, no part of the stipend is excludable under section 117. Meehan v. Commissioner,66 T.C. 794 (1976); Reese v. Commissioner,45 T.C. 407 (1966), affd. per curiam 373 F.2d 742 (4th Cir. 1967). The terms "scholarship" is defined in section 1.117-3(a), Income Tax Regs., as "an amount paid or allowed to, or for the benefit of, a student, whether an undergraduate or a graduate, to aid such individual in pursuing his studies." The term "fellowship grant" is defined in section 1.117-3(c), Income Tax Regs., as "an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuant of study or research." The regulations go on to qualify the terms as follows: Sec. 1.117-4. Items not considered as scholarships or fellowship grants. The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117: (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. *614 (1) Except as provided in paragraph (a) of § 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some *615 incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant. Petitioner relies inter alia on section 1.117-2(a)(1), Income Tax Regs. which provides, in part, that: in the case of an individual who is a candidate for a degree at an educational institution, the exclusion from gross income shall not apply * * * to that portion of any amount received as payment for teaching * * * required as a condition to receiving the scholarship or fellowship grant. Payments for such part-time employment shall be included in the gross income of the recipient in an amount determined by reference to the rate of compensation ordinarily paid for similar services * * *. The Supreme Court interpreted the regulations to mean that a scholarship or fellowship is a relatively disinterested "no-strings" educational grant with no requirement of any substantial quidproquo from the recipient. Bingler v.Johnson,394 U.S. 741 (1969). In determining whether a stipend is a scholarship or fellowship the "primary purpose" test must be applied. This test requires that "the primary *616 purpose of the payment must be to further the education and training of the recipient rather than to compensate the recipient for services rendered or to be rendered which directly benefit the payor." Reese v. Commissioner,supra at 411; section 1.117-4(c), Income Tax Regs. The relevant question is whether the student was paid to work or paid to study. Zolnay v. Commissioner,49 T.C. 389 (1968). This determination is a question of fact to be decided upon the circumstances of each case. Zolnay v. Commissioner,supra.
Petitioner's selection for the assistantship was based primarily on merit, and not on financial need. The Associate Dean of Graduate Studies at the University testified that applications based on financial need were processed by a separate office. Only students with demonstrated proficiency in a language were selected for the assistantships. Petitioner was not required to teach to obtain his degree. When we compare these and other factors set out above to those set forth in Steiman v. Commissioner,56 T.C. 1350, 1354-1356 (1971), we find that that case is clearly distinguishable. Steiman v. Commissioner,supra, *617 involved a student in a different department at Wayne State University and on evidence that the primary function of the stipend granted by that department was to enable graduate students to pursue their graduate studies, we held that stipend to be excludable. In that case the evidence showed that all candidates for a doctoral degree in the Department of Physiology and Pharmacology were required to perform academically related services, for which teaching qualified. The teaching services performed by graduate assistants were geared to provide the students with additional training rather than to secure direct benefits to the University. The regular faculty could have done the teaching had they not been required to supervise the student teachers. The students were graded on their performance as teachers, and the financial need of academically qualified students, rather than their teaching abilities or experience, was the primary consideration in deciding whether individual students would be awarded graduate assistantships, some other form of financial aid, or no financial assistance at all. We found in Steiman that administration of the University's policies at the granduate *618 level was decentralized to the several departments, and we specifically expressed no opinion there concerning other graduate assistantships at the University. Here, we likewise express no opinion as to graduate assistantships in other departments of the University. It may be true that the stipend from the assistantship was intended to provide petitioner with some financial assistance so that he could continue his studies. He may have been paid more than a part-time instructor would have bee. It is certainly within the University's discretion to pay a premium to its own well qualified graduate students. These factors are not inconsistent with what we find to be the primary purpose of the stipend, which was to provide teaching services for the benefit of the Department. Meehan v. Commissioner,supra;Jamieson v. Commissioner,51 T.C. 635 (1969). We note that petitioner was given responsibilities with respect to teaching the classes similar to those any new faculty member would expect to assume. Plez v. United States,213 Ct. Cl. 434, 551 F.2d 291 (1977). Though petitioner may have derived some incidental educational benefits *619 by virtue of the teaching experience afforded by the assistantship, this is not a determinative factor. Meehan v. Commissioner,supra.
Mere characterization by the University of part of the stipend as a scholarship is insufficient to meet the requirements of section 117 where, as here, the facts and circumstances dictate otherwise. [5] The basis of the University's characterization was that it could have employed part-time instructors to do the teaching performed by the graduate assistants for less that the total stipend paid the graduate assistants. Perhaps so, but the quality may have been lower. But even so, the University does not state what the excess stipend was for. Here, we have no direct evidence that any part of the stipend was a scholarship or fellowship grant. Furthermore, since teaching was not a prerequisite to obtaining a degree in this case, as it was in Steiman, consideration need not be given here to the exception to the limitation in section 117(b)(1). See discussion in Steiman v. Commissioner,supra at 1354. *620 We conclude that the entire stipend for the assistantship was compensation for services rendered to the Department. This quidproquo does not fit within the guidelines established in the regulations and subsequently approved by the Supreme Court in Bingler v. Johnson,supra. We observe that a cornerstone of the Supreme Court's reasoning in Bingler v. Johnson,supra at 751, was "the fact that under § 117 the comparatively modest sums received by part-time teaching assistants are clearly subject to taxation." Since petitioner has not met the initial hurdle of proving that the stipend was a scholarship, we do not reach the allocation question raised by petitioner. Accordingly, we hold that no part of the stipend received by petitioner is excludable from income under section 117. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1974, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable in this case.
3. This case was removed from "S" status because the parties stated that this problem was continuing in nature and merited consideration by this Court in a published opinion.↩
4. In 1976, section 117 provided, in relevant part, as follows: (a) GENERAL RULE. - In the case of an individual, gross income does not include -- (1) any amount received -- (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or (B) as a fellowship grant, (b) LIMITATIONS -- (1) INDIVIDUALS WHO ARE CANDIDATES FOR DEGREES.--In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, reserach, or other services shall not be regarded as part-time employment within the meaning of this paragraph.↩
5. We would not encourage medical schools to characterize stipends they pay as dual purpose or split stipends, part of it being compendation for services and the other part being an educational grant. See Burnstein v. United States,224 Ct.Cl. 1, 622 F.2d 529↩ (1980).