ROBERT G. LOUDON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Loudon v. Commissioner
Docket No. 3409-86.
United States Tax Court
T.C. Memo 1988-145; 1988 Tax Ct. Memo LEXIS 173; 55 T.C.M. (CCH) 543; T.C.M. (RIA) 88145; April 11, 1988. Robert G. Loudon, pro. se. Edsel Ford Holman, Jr., for the respondent. GOLDBERG
GOLDEBERG, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) of the Internal Revenue Code of 1986. [1]
Respondent determined a deficiency of $ 404 in petitioner's 1982 Federal income tax. Respondent also determined that petitioner was liable for additions to tax under section 6653(a)(1) in the amount of $ 20.20, and section 6653(a)(2) in an amount equal to 50 percent of the interest due on the underpayment of $ 404. In his answer to the petition, respondent raised affirmative issues by alleging that petitioner was liable for an addition to tax under section 6651(a) in the amount of $ 101, and an addition *175 to tax under section 6654(a) in the amount of $ 40.90. After concessions by respondent, the sole issue for decision is whether stipends received by petitioner as a graduate student in 1982 are excludable from gross income under section 117(a). Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. [2] Petitioner resided in Memphis, Tennessee when he filed his petition. In 1982, petitioner was enrolled as a candidate for a Ph.D. degree in chemistry at Memphis State University. Concurrent with his enrollment, petitioner became a teaching assistant in the Department of Chemistry. As a teaching assistant, petitioner received a $ 6,208.45 stipend from the *176 University during 1982. The University issued a Form W-2 to petitioner, although it did not withhold Federal or State income taxes. Teaching assistants were paid out of the general funds allocated by the State of Tennessee for the operation of the University. Petitioner was paid from funds allocated to the Department of Chemistry for graduate research or teaching assistantships. The amount of funds allocated was based on the department's anticipated need for teaching assistants. The need for teaching assistants was dependent on the number of undergraduates enrolled in chemistry classes. Teaching assistants did not receive health insurance benefits, sick leave, paid vacations, retirement benefits or any other fringe benefits provided to other University employees. Further, teaching assistants did not receive academic credit towards their graduate degrees for performing their teaching duties. Teaching assistantships were awarded by the Department of Chemistry based primarily on academic achievement and on an expressed interest in the program. Financial need was not a factor in determining whether a graduate student would be appointed to an assistantship. Teaching was not *177 a formal requirement for a Ph.D. in chemistry. However, graduate students expressing an interest in the teaching profession were required to participate in the department's teaching assistant program. Moreover, once a graduate student was appointed a teaching assistantship, he was required to teach, or he would lose his stipend. The University was not obligated to appoint teaching assistantships to all graduate students expressing an interest in teaching if funds were unavailable or if the department's demands for teaching assistants were low. The department reserved the right to terminate a teaching assistant's appointment for failure either to maintain an adequate grade point average or to make adequate progress towards a degree. The graduate research or teaching assistantship was the only financial assistance program offered through the Department of Chemistry. However, a graduate student needing funds for his education could compete for general scholarships offered to any graduate student at the University, or for national scholarships offered by such agencies as the National Institutes of Health and the National Science Foundation. In 1982, most of the Ph.D. candidates held *178 teaching assistantships. Each teaching assistant was required to sign a document titled "EMPLOYMENT CONTRACT" (for Temporary and Graduate Assistant Appointments Only)." The document refers to graduate assistants as "University employee[s]" and characterizes the stipend as a "salary." However, James C. Carter, Chairman of the Department of Chemistry until September 1982, authored a form letter in which he stated that teaching assistants were "not primarily rendering services to the [University]." The form letter was addressed "To Whom It May Concern," and copies were given to the graduate students for whatever purpose they cared to use them. During 1982, undergraduate chemistry courses were taught in two segments. Faculty professors taught the lecture segment of the undergraduate chemistry courses, while teaching assistants taught the laboratory segment. As a teaching assistant, petitioner conducted chemistry lab classes, supervised the lab for safety violations, prepared lab quizzes, answered student questions, and administered exams given in the lecture segment of the course. Teaching assistants were supervised by the faculty professors who taught the chemistry courses. *179 The degree of supervision was dependent on the teaching assistant's competence and ability. Professors attended the lab classes occasionally. Petitioner contends that the University could have hired part-time instructors to teach the labs for less money than the teaching assistants were paid. Respondent contends that the stipend petitioner received while serving as a teaching assistant was payment for services rendered to the University. Petitioner contends that his relationship to the University as teaching assistant was that of student-teacher rather than employer-employee. Section 117(a) excludes from gross income amounts received as a scholarship or fellowship grant. In the case of an individual who is a candidate for a degree, however, subsection (a) does not apply if the amounts received represent payments for teaching, research, or other part-time employment required as a condition to receiving the scholarship or fellowship grant. Sec. 117(b)(1). A limitation to section 117(b)(1) is provided by section 1.117-1(a)(2), Income Tax Regs., which states: If teaching, research, or other services are required of all candidates (whether or not recipients of scholarship *180 or fellowship grants) for a particular degree as a condition to receiving the degree, such teaching, research, or other services on the part of the recipient of a scholarship or fellowship grant who is a candidate for such degree shall not be regarded as part-time employment within the meaning of this paragraph. A scholarship or fellowship grant generally encompasses amounts paid to aid a student in his studies or research. Section 1.117-3(a) and (c), Income Tax Regs. It does not include amounts paid to allow an individual to pursue studies or research primarily for the benefit of the grantor, nor amounts which represent payment for services which are subject to the direction and supervision of the grantor. Section 1.117-4(c), Income Tax Regs. In upholding the validity of section 1.117-4(c), Income Tax Regs., the Supreme Court stated that scholarships and fellowships are "relatively disinterested, 'no strings' educational grants, with no requirement of any substantial quid pro quo from the recipients." Bingler v. Johnson,394 U.S. 741, 751 (1969). Our inquiry is thus twofold: (1) were the amounts received by petitioner scholarships; and, if so, (2) does the *181 exception found in section 117(b)(1), or the limitation thereto, apply. A stipend is a scholarship if the primary purpose of the payments is for the education of the recipient and not to pay him for services rendered. Yarlott v. Commissioner,78 T.C. 585, 595 (1982), affd. 717 F.2d 439 (8th Cir. 1983). This is a factual determination and the burden is on petitioner to prove his stipend was a scholarship. Olick v. Commissioner,73 T.C. 479, 486 (1979); Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). In this case we are presented with a situation where a graduate student was required to teach as a condition to receiving stipends. However, teaching was not a prerequisite for obtaining a Ph.D. degree at the University. Thus, applying the principles of Reese v. Commissioner,45 T.C. 407 (1966), affd. per curiam 373 F.2d 742 (4th Cir. 1967), and Zolnay v. Commissioner,49 T.C. 389 (1968), to the facts of the instant case where the nexus between services and education is absent, we conclude that petitioner's stipends constitute compensation for services rendered. *182 This case is factually distinguishable from Steiman v. Commissioner,56 T.C. 1350 (1971), upon which petitioner places much reliance. To begin with, in Steiman, all degree candidates were required to teach. In addition, stipends were awarded based on a student's financial needs. In this case, teaching was not a prerequisite to obtaining a degree, [3] and financial need was not a factor in appointing assistantships. Petitioner argues that his failure to receive any fringe benefits shows that he was a student rather than an employee. He further argues that the form letter signed by the Department of Chemistry chairman shows the department's purpose in appointing assistantships. On the other *183 hand, respondent notes that the University issued a Form W-2 to petitioner, and that teaching assistants were required to sign employment contracts. We do not believe that an inquiry into whether petitioner, as a teaching assistant, was formally an employee of the University is itself determinative. As the Supreme Court noted in Bingler v. Johnson, supra at 758 n. 32, any substantial quid pro quo is proscribed. We need not find that an employee-employer relationship existed for these stipends to be considered compensation. Meehan v. Commissioner,66 T.C. 794, 804 (1976). Further, neither the department's characterization of the stipends, nor its primary purpose in appointing assistantships is determinative. See Mizell v. United States,663 F.2d 772, 776 (8th Cir. 1981); Pelz v. United States,213 Ct. Cl. 434, 551 F.2d 291 (1977). Petitioner also attaches much importance to the alleged fact that it cost the University more to use teaching assistants than it would have cost to hire part-time instructors to perform the same functions. We are not satisfied on the basis of the record that part-time instructors would *184 have been hired to teach the lab classes, or if hired, that they would have been less costly. Whatever the case, however, the existence of a cost differential is not determinative. [4]
Finally, petitioner argues that the stipends provided the financial assistance he needed to continue his studies. However, payments which enable a student to continue his education can be for work rather than for study. Because the University required petitioner's services in return for the stipend, the stipend must be considered compensation, despite the obvious financial assistance it provided petitioner in continuing his studies. Meehan v. Commissioner, supra at 804-805. We conclude that petitioner has not carried his burden of proving that he was paid to study and not to work. Respondent has previously conceded that petitioner is not liable for any additions to tax. Accordingly, we find for respondent only on the issue that petitioner's stipend does not qualify as a scholarship. Decision will be entered for the respondent.
Footnotes
1. Hereinafter, all section references are to the Internal Revenue Code of 1954, as amended and as in effect in the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. ↩
2. By agreement of the parties, the testimony of witnesses James C. Carter and Howard G. Kirksey, as presented in Kittle v. Commissioner, docket No. 25003-86S, is incorporated herein by reference. The issue presented in Kittle v. Commissioner was substantially the same issue presented herein. Kittle↩ was also heard at the Memphis, Tennessee trial session on May 5, 1978, but the parties arrived at a settlement after trial. 3. We are constrained to note that the record does not support petitioner's proposition that teaching was required for all Ph.D. candidates. There was no formal University or department requirement that all such degree candidates teach. Moreover, the fact that most candidates, with few exceptions, did teach, is not enough to bring petitioner within the exception to the limitation of section 117(b)(1). See Sebberson v. Commissioner,T.C. Memo. 1984-605↩. 4. See Sebberson v. Commissioner, supra.↩