FRANK M. FARMER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Farmer v. Commissioner
Docket No. 31498-88
United States Tax Court
T.C. Memo 1990-199; 1990 Tax Ct. Memo LEXIS 222; 59 T.C.M. (CCH) 439; T.C.M. (RIA) 90199; April 18, 1990
Jeffrey B. Segal and Lisa Marie Mattingly, for the petitioner. Jennifer Troutman, for the respondent. PATE
MEMORANDUM FINDINGS OF FACT AND OPINION PATE, Special Trial Judge: Respondent determined *223 deficiencies of $ 529 and $ 930 in petitioner's 1984 and 1985 Federal income taxes, respectively. The issue for our decision is whether petitioner may exclude certain payments received from the University of Louisville from his income as a scholarship or fellowship grant. Frank M. Farmer (hereinafter "petitioner") is single. He resided in Louisville, Kentucky at the time he filed his petition in this case. Petitioner was a student in the English Department at the University of Louisville (hereinafter "the University") during 1984 and 1985. He was a candidate for the Master of Arts in Teaching degree (hereinafter "MAT"). In 1984 and 1985, teaching was not a requirement for candidates for the MAT degree, but was a requirement for the Ph.D. in English. Petitioner enrolled in the Ph.D. program in the fall of 1986. Petitioner was awarded a graduate teaching assistantship for the academic year 1984-1985 and 1985-1986. The assistantship was offered to him in a letter from the University, which states in part: I am happy to able to offer you a first year Graduate Teaching Assistantship for academic year 1984-85. It carries an annual stipend of $ 6,700.00 together with a full *224 thirty hours of tuition remission each academic year, summers included. It requires teaching duties of six hours each Fall and Spring semester (two courses), normally in the Freshman Composition Program (although other duties in various remedial or other programs may be substituted, in whole or in part, as dictated by necessity). Those teaching in the Freshman Composition Program may also be required to participate in the grading of the program exam and in the training sessions for graders. The purpose of the graduate teaching assistantships, was set out by the University in its "POLICY ON GENERAL FUND ASSISTANTSHIPS FOR GRADUATE STUDENTS." It states: The purpose of a graduate training assistantship is to provide support and training that enhances the student's academic program. It is not simply a job assigned to a graduate student. The chair of the student's department must approve placements both within and outside the department. In the appointment of assistants, the educational goal of the student must take precedence over programmatic needs. (emphasis in original) The University was not obligated to award graduate teaching assistantships to all students. They *225 were awarded based on the applicant's academic record, Graduate Record Examination scores, writing samples and letters of recommendation. Moreover, the English Department reserved the right to terminate the grant if the recipient failed to make satisfactory progress towards his degree or failed to meet the other requirements of the appointment. The number of graduate teaching assistants in the Department of English was kept constant regardless of fluctuation in student enrollment. They were paid out of general University funds allocated to the graduate school based upon a request the dean of the graduate school made after consulting with the dean of each academic unit under his direction. In turn, the dean of each academic unit was responsible for ensuring that tuition remission charges did not exceed the allotted amount and that assistantship funds were used effectively to provide needed services while maintaining or enhancing the quality of educational programs. Petitioner was paid from funds so allocated to the Department of English. As a graduate teaching assistant, petitioner taught two sections of freshman composition per semester, attended orientation meetings and certain *226 staff development meetings. He received $ 3,425 and $ 7,055 (less amounts withheld for federal income tax and state and local taxes) from his assistantships during 1984 and 1985. No social security taxes were withheld. He received few fringe benefits, as graduate teaching assistants were excluded from the University's retirement plan, received no medical leave or sick leave, and could not purchase medical insurance through the University. Petitioner excluded $ 3,425 and $ 7,055 from his 1984 and 1985 gross income, respectively, on the grounds that his graduate teaching assistantship constituted a "scholarship." Respondent determined that the amounts petitioner received were not excludable from his gross income under section 117. Petitioner bears the burden to prove that respondent's determination was wrong. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). Section 117(a)(1) [1] provides generally that scholarships and fellowship grants are excludable from gross income. However, any amount "received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship *227 or the fellowship grant" is taxable as compensation for services. Section 117(b)(1). Nevertheless, "If teaching, research, or other services are required of all candidates * * * for a particular degree as a condition to receiving such degree, such teaching * * * shall not be regarded as part-time employment." Section 117(b)(1).[2] The exception in subsection (b) of section 117 for services required of all candidates comes into play only after the taxpayer establishes that the payments in question constitute a "scholarship" or "fellowship grant." Brubakken v. Commissioner, 67 T.C. 249 (1976); Steiman v. Commissioner, 56 T.C. 1350 (1971). If the payments do not possess the characteristics of a scholarship or fellowship, no exclusion is available, whether or not the services rendered were required of all candidates for the degree. For an extensive review of the legislative history of these provisions, see Reese v. Commissioner, 45 T.C. 407 (1966), affd. per curiam 373 F.2d 742 (4th Cir. 1967). *228 The regulations define a scholarship as "an amount paid or allowed to, or for the benefit of, a student, whether an undergraduate or a graduate, to aid such individual in pursuing his studies." Sec.1.117-3(a), Income Tax Regs. Similarly, a fellowship is defined as "an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research." Sec. 1.117-3(c), Income Tax Regs.Section 1.117-4(c)(1), Income Tax Regs., provides, however, that the terms "scholarship" and "fellowship grant" do not include any amount which "represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor." In Bingler v. Johnson, 394 U.S. 741, 751 (1969), the Supreme Court sustained the validity of these regulations stating: the definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of "scholarships" and "fellowships" as relatively disinterested, "no strings" educational grants, with no requirement of any substantial quid pro quo from the recipients. Thus, the *229 distinction between compensation for services and a scholarship or a fellowship grant turns on whether the recipient was paid to work or paid to study. Yarlott v. Commissioner, 78 T.C. 585, 595 (1982), affd. 717 F.2d 439 (8th Cir. 1983); Zolnay v. Commissioner, 49 T.C. 389, 396 (1968). Admittedly, precise line-drawing in this area is often difficult. See Olick v. Commissioner, 73 T.C. 479 (1979); Zolnay v. Commissioner, supra.Determination of the nature of such payments in each case must necessarily "turn upon its own particular facts and circumstances". Steiman v. Commissioner, 56 T.C. 1350, 1355 (1971), quoting Zolnay v. Commissioner, supra at 395. Petitioner contends that his graduate teaching assistantship was to advance his education and, therefore, falls within the definition of "scholarship" in section 1.117-3(a), Income Tax Regs. The University's policy manual states that the purpose of an assistantship is to provide support and training which will enhance the student's academic progress. In this regard, the faculty assigned graduate teaching assistants *230 to jobs which were related to their studies. They considered the studies of the graduate students of primary importance, and a student could be relieved of his duties if teaching impeded his academic progress. The teaching experience petitioner gained from being a graduate teaching assistant clearly benefited his professional development. However, nowhere does it appear that the student would continue to receive the stipend had he been unable to perform the required services or had the faculty recommended that he be removed from teaching because it was an impediment to his progress toward a degree. Quite the opposite, payments would have stopped had petitioner not been able to perform the teaching services required by the grant. Further, it is not disputed that the pay petitioner received as a graduate teaching assistant enabled him to pursue his studies. In fact, because the Department of English discouraged students from accepting outside employment that could have interferred with their studies, petitioner may not have been able to continue his graduate studies without the financial assistance provided by the assistantship. Nevertheless, payments which enable a student to *231 continue his education can just as well be for work as for study. Money from either source would enable a student to pay his living expenses while pursuing his studies. Nevertheless, petitioner contends that the University did not consider him an employee and, therefore, did not pay him "compensation." Petitioner points to his failure to receive any meaningful fringe benefits and the fact that both the associate dean of the graduate school and the acting chairman of the Department of English did not consider graduate teaching assistants to be employees, to show that he was a student rather than an employee. On the other hand, the University did deduct income taxes (federal, state, and local) from petitioner's checks thereby treating him as an "employee." Further, in correspondence, the University specifically stated that it made no determination in this regard. Consequently, at best, we think that the University took no position in the matter. We do not believe, however, that an inquiry into whether petitioner was or was not an employee is itself determinative. As the Supreme Court noted in Bingler v. Johnson, supra at 758 n.32, any substantial quid pro *232 quo is proscribed. We need not find that an employee-employer relationship existed for stipends to be considered compensation. Meehan v. Commissioner, 66 T.C. 794, 804 (1976). Monies paid to persons not within the strict confines of an employment relationship may nevertheless, constitute compensation. Further, neither the English department's characterization of the stipends, nor its primary purpose in appointing assistantships is determinative. Loudon v. Commissioner, T.C. Memo. 1988-145, affd. by unpublished opinion 869 F.2d 1491 (6th Cir. 1989); see Mizell v. United States, 663 F.2d 772, 776 (8th Cir. 1981); Pelz v. United States, 213 Ct. Cl. 434, 551 F.2d 291 (1977). The bottom line in this case is that petitioner was required to teach as a condition to receiving the stipends. Petitioner's teaching services were a substantial quid pro quo. The fact that his teaching also aided his academic progress does not turn the compensation he received into scholarship income. Therefore, we conclude that petitioner's stipends constitute compensation for services he rendered as a graduate teaching *233 assistant, and not a scholarship or a fellowship grant within the meaning of subsection (a) of section 117. Loudon v. Commissioner, supra.While petitioner's graduate teaching assistantship was not merely a job, it was a job nonetheless. Petitioner also argues that we should include in his gross income only a portion of the stipends he received because not all of it constitutes compensation, citing section 1.117-2(a)(1), Income Tax Regs, in support thereof. He would have us measure the compensation element by the amount of money that the University pays part-time lecturers. Since, as a graduate assistant, petitioner was paid more than part-time lecturers, he asks us to find that the "excess" was not for services but rather a scholarship. First, we note that although graduate teaching assistants were paid more than part-time lecturers, there is some evidence in the record that graduate teaching assistants were required to perform services in addition to teaching. More to the point, however, is that there is no evidence in this record to show how the various levels of compensation were determined. In order to make the finding petitioner asks for, we would *234 need a myriad of information regarding hours, duties, qualifications, fringe benefits, etc. Even with such evidence, we would ultimately have to rely on the evaluation made by the University of each person's relative worth in setting their salary. The record simply is not sufficient for the finding petitioner has requested. Finally, we reject out of hand petitioner's last argument, that because Ph.D. students in the English department were required to meet a teaching requirement, petitioner's work as a graduate teaching assistant while a MAT candidate should not be regarded as part-time employment. He argues that because the teaching experience he acquired could be used later to fulfill the Ph.D. requirement, his stipend should be excluded under the exception contained in section 117(b)(1). That exception excludes payments made for services which are required of all candidates for a particular degree. The short answer to that argument is that petitioner was not enrolled in a Ph.D. program during the years in issue. Consequently, the requirements for the Ph.D. cannot be used to evaluate the applicability of section 117 to petitioner's stipend. We have considered petitioner's *235 remaining contentions, including those relative to Logan v. United States, 518 F.2d 143 (6th Cir. 1975), and Stewart v. United States, 363 F.2d 355 (6th Cir. 1966), and find them without merit. We hold that the stipends petitioner received during 1984 and 1985 were not scholarships or fellowship grants within the meaning of section 117(a). Accordingly, they must be included, in their entirety, in petitioner's gross income for those years. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code, as amended and in effect for the year in issue. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. The subsequent revision of sec. 117 by sec. 123(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2112-2113, does not affect this case.↩