Gaylan L. and Mary H. ROCKSWOLD; Thomas A. and Susan E. Christiansen; Melvin A. and Rebecca L. Yarlott, Jr., Appellants,

v.

UNITED STATES of America, Appellee.

No. 79–1631.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 17, 1980.

Decided April 8, 1980.

Erwin M. Goldstein, Faegre & Benson, Minneapolis, Minn., argued, Lawrence C. Brown and John S. Jagiela, Minneapolis, Minn., and Ronald Patrick Smith, St. Paul, Minn., on brief, for appellants.

R. Russell Mather, Atty., Appellate Section, Dept. of Justice, Washington, D. C., argued, M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Ann Belanger Durney and Thorwald H. Anderson, Jr., U. S. Atty., Minneapolis, Minn., on brief, for appellee.

Before LAY, Chief Judge, STEPHENSON, Circuit Judge, and THOMAS,* Senior District Judge.

LAY, Chief Judge.

Doctors Gaylan L. Rockswold, Thomas E. Christiansen and Melvin A. Yarlott claim certain grant monies given by the University of Minnesota are excludable from their gross income pursuant to 26 U.S.C. § 117.[1] The district court, the Honorable Edward J. Devitt, Chief Judge, presiding, held that the grants were not scholarships or fellowship grants and therefore were not excludable from gross income. *Rockswold v. United States,* 471 F.Supp. 1385 (D.Minn.1979).

Taxpayers Rockswold, Yarlott, and Christiansen received payments while enrolled in advanced graduate degree programs in neurosurgery, surgery, and otolaryngology respectively at the University of Minnesota during the tax years in question. They seek refunds for overpayments for various tax years during the period 1971 through 1974. The Graduate School Program is designed to educate and train physicians so that they can pursue careers in academic medicine and medical research. The University of Minnesota Graduate School Program is highly prestigious. When an applicant is accepted into a program he is granted a medical fellowship appointment and is referred to as a "medical fellow." A medical fellow is virtually assured a fellowship grant. The grant is contingent upon the medical fellow's maintaining the academic standards required of all degree candidates. The grant is not based on financial need or academic ability.

Included within the required curriculum of a medical fellow is the performance of certain duties during the clinical phase of his training: making daily rounds with a staff physician; ordering prescriptions; writing treatment orders for patient care; taking patient's physical and medical histories; ordering special reports including consultations, x-rays, and chemical laboratory analysis; assessing and diagnosing patients; reviewing intern or medical student diagnosis; securing autopsy consents; preparing progress notes, case summaries, and discharge notes; commencing the administration of intravenous fluids; inserting nasal gastric tubes; scheduling operating room appointments; preparing patients for operations; preparing operating notes; changing dressings; removing sutures; and working in the emergency room. In addition, medical fellows perform several hundred operations during their years of clinical training. These operations are most often carried out in the presence of either a staff or treating physician, though occasionally the medical fellow is without any immediate direction or supervision.

The district court also found that the final year of the advance degree program requires that the medical fellows act as chief resident at the University of Minnesota Hospital or one of the affiliated hospitals. As chief resident, the medical fellows

---

* The Honorable Daniel H. Thomas, Senior District Judge, Southern District of Alabama, sitting by designation.

1. Each doctor's wife was included in this action because they had filed joint returns with their husbands.

are on call 24 hours a day and assume extensive supervisory and administrative responsibilities.

The duties performed during the clinical phase of the medical fellows' training are similar in many respects to duties performed by residents. Unlike residents, however, medical fellows are also required to do a considerable amount of independent research. Medical fellows must also prepare a thesis and generally their regimen is much more academically oriented.

The grants awarded by the University of Minnesota are given to the medical fellows in the clinical phases of their study as well as in the research phases. State and federal grants as well as private contributions provide, in part, the money needed to fund medical fellowship grants. However, the largest portion of the funds comes from hospitals affiliated with the University of Minnesota which participate in the advanced degree program. The district court made a factual finding that these hospitals pay an amount based on the number of fellows assigned to that hospital.

Section 117(a) of the Internal Revenue Code provides:

(a) *General rule.*—In the case of an individual, gross income does not include—

(1) any amount received—

(A) as a scholarship at an educational organization described in section 170(b)(1)(A)(ii), or

(B) as a fellowship grant,

including the value of contributed services and accommodations; and

(2) any amount received to cover expenses for—

(A) travel,

(B) research,

(C) clerical help, or

(D) equipment,

which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.

The district court found that the payments made to the medical fellows were not fellowship grants. The court, in applying Treas.Reg. § 1.117–4 [2] found that these payments were made in return for valuable services rendered by the medical fellows. *See Bingler v. Johnson*, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969).[3]

The taxpayers assert that the district court failed to consider the evidence as a whole, as it was required to do under *Leathers v. United States*, 471 F.2d 856, 861 (8th Cir. 1972), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2754, 37 L.Ed.2d 161 (1973) and *Woddail v. Commissioner*, 321 F.2d 721 (10th Cir. 1963). *See Bailey v. Commissioner*, 60 T.C. 447 (1973); *Bieberdorf v. Commissioner*, 60 T.C. 114 (1973). They claim that the record shows that the medical fellows spend only a small portion of their time performing the "services" listed by the district court and that these "services" do not significantly enhance patient care.

---

2. Treas.Reg. § 1.117–4 provides in part:

§ 1.117–4 *Items not considered as scholarships or fellowship grants.*

The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117.

.    .    .    .    .

(c) *Amounts paid as compensation for services or primarily for the benefit of the grantor.* (1) Except as provided in paragraph (a) of § 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are

subject to the direction or supervision of the grantor.

(2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor.

3. In *Bingler* the Supreme Court observed:

Here, the definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of "scholarships" and "fellowships" as relatively disinterested, "no-strings" educational grants, with no requirement of any substantial *quid pro quo* from the recipients.

*Bingler v. Johnson*, 394 U.S. 741, 751, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969).

Our review of the record shows that the medical fellows did perform many services and that they were of substantial benefit to the hospital. This court must affirm the district court's determination if it is supported by substantial evidence and is not clearly erroneous. *Ward v. Commissioner*, 449 F.2d 766 (8th Cir. 1971); *Wertzberger v. United States*, 441 F.2d 1166 (8th Cir. 1971). The fact that the services provided required only a portion of the medical fellows' time is not controlling. The threshold question is whether the payment was made as quid pro quo for the services rendered. *Bingler v. Johnson*, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969). The district court determined that the medical fellows received the money as payment for the services. We hold there was sufficient evidence for the district court finding that the purpose of the fellowship grants was reimbursement for services and therefore there was quid quo pro.

The taxpayers urge that the district court's interpretation of section 117 fails to consider the express provisions of subsection 117(b)(1).[4] We disagree. The limitation and exception of subsection 117(b)(1) becomes applicable only if the payment in question has first been found to constitute a scholarship or fellowship grant. *Woddail v. Commissioner*, 321 F.2d 721 (10th Cir. 1963); *Steinmetz v. United States*, 343 F.Supp. 384 (N.D.Cal.1972); *Rosenthal v. Commissioner*, 63 T.C. 454 (1975); *Steiman v. Commissioner*, 56 T.C. 1350 (1971); *Reese v. Commissioner*, 45 T.C. 407 (1966), aff'd, 373 F.2d 742 (4th Cir. 1967).

The taxpayers further contend that the quid pro quo test devised in *Bingler v. Johnson*, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969), was improperly applied by the district court. Basically, their contention is that the University of Minnesota makes the payments from funds derived from several sources to the medical fellows and the services supplied by the medical fellows benefits and the affiliated hospitals. On this basis, they contend there is no quid pro quo. This contention overlooks the district court's finding that the affiliated hospitals utilize the services of medical fellows, and their affiliation agreement with the University requires them to fund a specific number of grants.

The district court's finding is supported by numerous cases involving residents in nondegree granting programs who have attempted unsuccessfully to have a portion of their stipends excluded from their taxable income.[5] The taxpayers claim that these decisions should be distinguished since they are enrolled in a degree granting program. *But see Rosenthal v. Commissioner*, 63 T.C. 454 (1975).[6] However, under section 117

4. Subsection 117(b)(1) of 26 U.S.C. provides:
 (b) *Limitations.—*
 (1) *Individuals who are candidates for degrees.—*In the case of an individual who is a candidate for a degree at an educational organization described in section 170(b)(1)(A)(ii), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.

5. *See, e. g., Meek v. United States*, 608 F.2d 368 (9th Cir. 1979); *Parr v. United States*, 469 F.2d 1156 (5th Cir. 1972); *Hembree v. United States*,
464 F.2d 1262 (4th Cir. 1972); *Quast v. United States*, 428 F.2d 750 (8th Cir. 1970); *Woddail v. Commissioner*, 321 F.2d 721 (10th Cir. 1963); *Tobin v. United States*, 323 F.Supp. 239 (S.D. Tex.1971); *Kwass v. United States*, 319 F.Supp. 186 (E.D.Mich.1970); *Wertzberger v. United States*, 315 F.Supp. 34 (W.D.Mo.1970), aff'd, 441 F.2d 1166 (8th Cir. 1971); *Moll v. Commissioner*, 57 T.C. 579 (1972); *Fisher v. Commissioner*, 56 T.C. 1201 (1971); *Proskey v. Commissioner*, 51 T.C. 918 (1969). *But see Leathers v. United States*, 471 F.2d 856 (8th Cir. 1972), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2754, 37 L.Ed.2d 161 (1973); *Bieberdorf v. Commissioner*, 60 T.C. 114 (1973); *Bailey v. Commissioner*, 60 T.C. 447 (1973).

6. The taxpayers argue that Rosenthal was in a residency program performing the same tasks as residents who were not enrolled in the degree program. They note that their program is different than any of the residents who are providing services at the same hospital. How-

the initial determination of whether the payment is a scholarship is the same whether the taxpayer is in a degree granting program or not. The sole issue on this appeal is whether the district court's decision was clearly erroneous. We cannot say that it is.

The judgment is affirmed.

ever, the decision in *Rosenthal* was not based on the fact that residents and enrolled students performed the same services, rather it was determined on the fact that the purpose of the payments to Rosenthal was compensatory and not to further his education and training. The

district court made the same determination here.

