Myron W. MIZELL; Karen L. Mizell; Jerry D. Kennett; Leah B. Kennett; Zbigniew T. Lorenc; James Duane Nanson; Robert S. Hoffman; Charles D. Gregorius; Carolyn M. Gregorius; John T. Grandone; Gloria J. Grandone; Peter A. MacKercher, II; William N. Baskin; Lewis C. Vollmar, Jr.; Howard J. Aylward, Jr.; Dorothy E. Aylward; Curtis C. Blatz; Kathryn M. Blatz; David R. Nichols; Betty J. Nichols; William T. Tatum; Marilyn O. Tatum; and Robert M. Ross, Appellees,

v.

**UNITED STATES of America, Appellant.**

No. 80–2079.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1981.

Decided Oct. 29, 1981.

Rehearing and Rehearing En Banc Denied Jan. 21, 1982. See 669 F.2d 552.

Craig A. Van Matre, P.C., Columbia, Mo., for appellees.

M. Carr Ferguson, Asst. Atty. Gen., Michael L. Paup, Ann Belanger Durney, JoAnn Horn, Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellant; Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., of counsel.

Before LAY, Chief Judge, and HEANEY and ROSS, Circuit Judges.

LAY, Chief Judge.

This is an appeal by the government from judgments entered on a jury verdict rendered in the United States District Court for the Western District of Missouri. The taxpayers served in residency programs in the departments of medicine, anesthesiology, or dermatology at the University of Missouri-Columbia Medical Center in order to attain the necessary training and prerequisites for board certification in the various areas of specialization. Taxpayers excluded portions of "stipend" payments received from the university from their federal income tax computations of gross income for the taxable years of 1972, 1973, and 1974. The Internal Revenue Service asserted that the excluded stipend payments were not excludable "scholarships" or "fellowships" within the meaning of I.R.C. § 117, and assessed additional taxes, which were paid by the plaintiffs. Upon subsequent denial by the Internal Revenue Service of their claims for refunds, the plaintiffs initiated separate actions in the district court seeking refunds of the federal income taxes paid on the income allegedly excludable pursuant to I.R.C. § 117. The actions were consolidated for trial, and, after denial of the United States' motion for a directed verdict, the jury found that the stipends were scholarships or fellowships and not taxable compensation.[1] The Government appeals on the sole issue of insufficiency or insubstantiality of the evidence to support the jury verdict.

*Section 117.*

Section 117 of the Internal Revenue Code of 1954 provides in pertinent part:

---

1. The jury's role is not to determine whether the stipend is to be excluded under the Internal Revenue Code. The form of the verdict as used by the district court is, thus, erroneous in this regard. The jury, acting as a factfinder, is to determine only the factual issue, to wit, whether the primary purpose for which the payments were made was for services rendered or whether the payments were fellowship or scholarship grants, as legally defined by the district court.

*Scholarships and fellowship grants.*

(a) *General rule.* In the case of an individual, gross income does not include—

(1) any amount received—

(A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or

(B) as a fellowship grant,

including the value of contributed services and accommodations; and

(2) any amount received to cover expenses for—

(A) travel,

(B) research,

(C) clerical help, or

(D) equipment,

which are incident to such scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.

I.R.C. § 117(a).[2] Therefore, the threshold determination is whether the payments in question are scholarships or fellowships, *see Bingler v. Johnson,* 394 U.S. 741, 749, 89 S.Ct. 1439, 1444, 22 L.Ed.2d 695 (1969); and such a factual determination includes analysis of the facts in light of not only the statute, but also the applicable regulations and existing case law. *See Rockswold v. United States,* 620 F.2d 166, 168–69 (8th Cir. 1980). The Internal Revenue Service regulations provide some definitional guidelines;[3] and, once characterized as "scholarships" or "fellowships," payments are subject to a further limitation that the

2. Because the plaintiffs were certificate, not degree, candidates, the following conditions and limitations are also applicable:

(2) Individuals who are not candidates for degrees. In the case of an individual who is not a candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall apply only if the condition in subparagraph (A) is satisfied and then only within the limitations provided in subparagraph (B).

(A) Conditions for exclusion. The grantor of the scholarship or fellowship grant is—

(i) an organization described in section 501(c)(3) which is exempt from tax under section 501(a).

. . . .

(B) Extent of exclusion. The amount of the scholarship or fellowship grant excluded under subsection (a)(1) in any taxable year shall be limited to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or fellowship grant during such taxable year, except that no exclusion shall be allowed under subsection (a) after the recipient has been entitled to exclude under this section for a period of 36 months (whether or not consecutive) amounts received as a scholarship or fellowship grant while not a candidate for a degree at an educational institution (as defined in section 151(e)(4)).

I.R.C. § 117(b)(2).

3. The regulations provide in part:

*Definitions.*

(a) *Scholarship.* A scholarship generally means an amount paid or allowed to, or for the benefit of, a student, whether an undergraduate or a graduate, to aid such individual in pursuing his studies. The term includes the value of contributed services and accommodations (see paragraph (d) of this section) and the amount of tuition, matriculation, and other fees which are furnished or remitted to a student to aid him in pursuing his studies. The term also includes any amount received in the nature of a family allowance as a part of a scholarship. However, the term does not include any amount provided by an individual to aid a relative, friend, or other individual in pursuing his studies where the grantor is motivated by family or philanthropic considerations. If an educational institution maintains or participates in a plan whereby the tuition of a child of a faculty member of such institution is remitted by any other participating educational institution attended by such child, the amount of the tuition so remitted shall be considered to be an amount received as a scholarship.

(c) *Fellowship grant.* A fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research. The term includes the value of contributed services and accommodations (see paragraph (d) of this section) and the amount of tuition, matriculation, and other fees which are furnished or remitted to an individual to aid him in the pursuit of study or research. The term also includes any amount received in the nature of a family allowance as a part of a fellowship grant. However, the term does not include any amount provided by an individual to aid a relative, friend, or other individual in the pursuit of study or research where the grantor is motivated by family or philanthropic considerations.

Treas.Reg. § 1.117–3(a), (c).

amounts paid do not represent compensation for past, present, or future employment services.[4] In addition to these restrictions, the regulations provide:

> However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. *Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefits to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant.*

Treas.Reg. § 1.117–4(c) (emphasis added). The Supreme Court has previously upheld the validity of these regulations, stating:

> [T]he definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of "scholarships" and "fellowships" as relatively disinterested, "no-strings" educational grants, with no requirement of any substantial *quid pro quo* from the recipients.

*Bingler v. Johnson,* 394 U.S. 741, 751, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969).

Although there is a plethora of similar cases involving residents in degree and nondegree granting programs who have attempted unsuccessfully to apply the section 117 exclusion to a portion of their stipends,[5] it is well settled in this circuit, as well as others, that the ultimate question of whether a payment is an excludable scholarship or fellowship within the meaning of section 117 is, nevertheless, a question of fact. As this court acknowledged in *Leathers v. United States,* 471 F.2d 856, 858 (8th Cir. 1972), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2754, 37 L.Ed.2d 161 (1973):

> [T]he question whether a payment may be excluded from income under 26 U.S. C.A. § 117 is a question of fact to be resolved by the finder of fact.

> "Whether payments or allowances to an individual taxpayer were made to enable him to pursue studies and research primarily for the benefit of the grantor is basically a question of fact. *Ussery v. United States,* \* \* \* 296 F.2d [582] pp. 586–587 [5th Cir. 1961]; *Woddail v. Commissioner of Internal Revenue,* 321 F.2d 721, 723–724 (10th Cir. 1963). Cf. *Commissioner of Internal Revenue v. Ide,* 335

---

4.. The regulations provide:

> *Items not considered as scholarships or fellowship grants.*
> The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117:
> (c) *Amounts paid as compensation for services or primarily for the benefit of the grantor.* (1) Except as provided in paragraph (a) of § 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.
> (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor.
> Treas.Reg. § 1.117–4(c).

5. *See, e.g., Rockswold v. United States,* 620 F.2d 166 (8th Cir. 1980); *Wertzberger v. United States,* 441 F.2d 1166 (8th Cir. 1971); *Quast v. United States,* 428 F.2d 750 (8th Cir. 1970); *Meek v. United States,* 608 F.2d 368 (9th Cir. 1979); *Hembree v. United States,* 464 F.2d 1262 (4th Cir. 1972); *Parr v. United States,* 469 F.2d 1156 (5th Cir. 1972); *Woddail v. Commissioner,* 321 F.2d 721 (10th Cir. 1963); *Burstein v. United States,* 622 F.2d 529 (Ct.Cl.1980); *Fisher v. Commissioner,* 56 T.C. 1201 (1971); *Proskey v. Commissioner,* 51 T.C. 918 (1969). *But see Leathers v. United States,* 471 F.2d 856 (8th Cir. 1972), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2754, 37 L.Ed.2d 161 (1973); *Bieberdorf v. Commissioner,* 60 T.C. 114 (1973); *Bailey v. Commissioner,* 60 T.C. 447 (1973); Rev.Rul. 57–560, 1957–2 C.B. 108.

F.2d 852, 855 (3d Cir. 1964); *Stewart v. United States*, 363 F.2d 355, 357 (6th Cir. 1966)." *Reiffen v. United States*, 180 Ct.Cl. 296, 376 F.2d 883, 890 (1967).

471 F.2d at 858.

This court will not reverse the jury's determination of a factual question where the verdict is supported by substantial evidence; nor will an appellate court substitute its judgment for that of the jury or judge sitting as fact-finder. *Leathers v. United States, supra,* at 858.

The United States contends, in essence, that, in light of the overwhelming number of factually similar cases which have held against the taxpayers on the section 117 exclusion issue, reasonable minds cannot hold to the contrary in this case. We do not agree. Although significant evidence to support the Government's argument that the stipends were in the nature of compensation, or were *quid* for the *quo* of services, admittedly exists, the jury's verdict must be upheld unless reasonable minds, viewing the evidence in the light most favorable to the prevailing party, could *only* have found *otherwise* than fact-finder. *See McIntyre v. Everest & Jennings, Inc.,* 575 F.2d 155, 158 (8th Cir.), *cert. denied,* 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978).

█ It is undisputed that the objective of the residency program was to obtain increased competence, ability, and training in the various specialized areas of medicine. There exists substantial evidence which shows that the purpose behind the assigned tasks of patient care and teaching was the educational benefit derived from clinical exposure and from articulating concepts and defending positions to medical students or fellow colleagues. It is also undisputed that, unless a physician participated in a residency program, he could not meet the requirements for board certification as a specialist. In addition, oral and written examinations were administered throughout the course of the residency program.

In evaluating the issue before us, we must go further and view the factual support as to the primary purpose of the payments to the taxpayers. There exists substantial evidence that the residency stipend received by a student at the university was designed to defray his living expenses during the year he conducts his training. Originally, a "resident" was required to live in the hospital during his training. The stipend allows the resident to live outside the hospital and still remain free for the 24-hour call duty necessary for experience and training. The amount of the stipend was calculated by the university on the amount necessary for a resident to exist in a reasonably normal fashion in the community. It was not in any way conditioned upon job performance or the number of patients treated. The university's bookkeeping practices and the withholding of federal taxes from the stipends were not indicative of the true nature of the payments, for the same treatment was applied to clearly excludable payments to purely academic researchers. The university's articulated reason for such treatment was to extricate itself from any future federal income tax disputes, such as in the instant case.

In addition to the above evidence, the record shows that all patients in the medical center were seen by both residents and an attending staff physician, but professional fees and laboratory fees were not assessed for work performed by a resident. The hospital charged only for the attending physician's services and laboratory or radiological services performed by hospital staff. Residents who were seeing patients were always supervised by the medical school faculty; therefore, the residents' services were a duplication, not substitution, of patient care services. The attending physician always had the ultimate responsibility for the patient's care. Thus, the hospital actually lost money on the patient care performed by residents. In addition, the staff physicians saw approximately six or seven patients per day, which is an average physician patient load. Thus, the hospital could have operated without the residents' services. Finally, there was no obligation to

work for the state upon completion of the residency program. We find that these facts, when viewed in the light most favorable to the taxpayers, do provide substantial evidence that the residents' stipends were in the nature of scholarships or fellowships.

Admittedly, there are conflicting facts in this case indicative of compensation, such as the provision of annual increases based upon tenure in the program, not upon financial need, and the provision of an extensive fringe benefits package. We are also concerned that the result reached in the district court somewhat impedes uniformity and predictability in this area of the law. However, as the Supreme Court explained in an analogous case regarding treatment of corporate gifts:

> This conclusion may not satisfy an academic desire for tidiness, symmetry and precision in this area, any more than a system based on the determinations of various fact-finders ordinarily does. But we see it as implicit in the present statutory treatment ... and in the variety of forums in which federal income tax cases can be tried. If there is fear of undue uncertainty or overmuch litigation, Congress may make more precise its treatment of the matter by singling out certain factors and making them determinative of the matter .... Doubtless diversity of result will tend to be lessened somewhat since federal income tax decisions, even those in tribunals of first instance turning on issues of fact, tend to be reported, and since there may be a natural tendency of professional triers of fact to follow one another's determinations, even as to factual matters. But the question here remains basically one of fact, for determination on a case-by-case basis.

One consequence of this is that appellate review of determinations in this field must be quite restricted. Where a jury has tried the matter upon correct instructions, the only inquiry is whether it can-

not be said that reasonable men could reach differing conclusions on the issue. *Commissioner v. Duberstein,* 363 U.S. 278, 290–91, 80 S.Ct. 1190, 1199–1200, 4 L.Ed.2d 1218 (1960).

A directed verdict is proper "only when the evidence is such that, without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict." *Hladyshewski v. Robinson,* 557 F.2d 1251, 1252 (8th Cir. 1977). Because it cannot be said that reasonable men could not reach differing conclusions in this case, the judgment of the district court must be affirmed.

Judgment affirmed.

ROSS, Circuit Judge, dissenting.

I would reverse and remand this case with directions to dismiss for the reasons set forth in Judge Bright's dissent in *Leathers v. United States,* 471 F.2d 856 (8th Cir. 1972), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2754, 37 L.Ed.2d 161 (1973). I can not justify, on the basis of a finding of fact by a jury, the discrepancy in result reached by our court in this case and *Leathers* vis-a-vis the result we have reached on findings of fact by trial judges in two very similar cases. *Rockswold v. United States,* 620 F.2d 166 (8th Cir. 1980); *Wertzberger v. United States,* 441 F.2d 1166 (8th Cir. 1971); *see also Quast v. United States,* 428 F.2d 750 (8th Cir. 1970) (jury decision). In my opinion this discrepancy should be resolved by the court en banc.