ANTOINETTE S. GOMES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Gomes v. Commissioner
Docket No. 11643-81.
United States Tax Court
T.C. Memo 1983-292; 1983 Tax Ct. Memo LEXIS 492; 46 T.C.M. (CCH) 239; T.C.M. (RIA) 83292; May 25, 1983. Harry N. Ray, for the petitioner. Dale L. Newland, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined a deficiency in the amount of $4,019.00 in petitioner's 1977 Federal income tax. The sole issue for decision is whether amounts received by a medical resident are excludable from gross income as a scholarship or fellowship under section 117. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly [2]
*493 Petitioner resided in Minneapolis, Minnesota, when she filed her petition in this case. She timely filed her 1977 individual Federal income tax return with the Internal Revenue Service. Petitioner received her M.D. degree from the Medical College of Pennsylvania at Philadelphia, Pennsylvania, in 1969. She commenced a residency in internal medicine at LAC-USC Medical Center, Los Angeles, California, in July 1970 and completed this residency in July 1972. She then commenced a residency in diagnostic radiology in July 1972 and completed this residency in July 1975. From July 1975 until July 1976, petitioner held a fellowship in cardiology and cardiovascular radiology at UCLA Hospital. Thereafter, from July 1976 until April 1978, petitioner had an additional fellowship in cardiology and cardiovascular radiology. During the relevant period between January 1, 1977, and June 30, 1977, petitioner performed a clinical cardiovascular radiology residency at the University of Minnesota Hospital. [3] While there, she was a candidate for a Masters of Science degree in radiology from the University of Minnesota. *494 During 1977, petitioner received a stipend for her residency. The total annual stipend was $16,138.00. Of this amount, $6,800.04 is excludable from gross income under section 117 [4] and is not here in issue. The disputed portion, consisting of the balance of the stipend, was paid to petitioner by the University of Minnesota during the first half of 1977. The source of these funds was a United States Public Health Training Grant [5]. The amount of petitioner's stipend was determined by the number of years of prior residency training she had completed, and was equal in amount to that paid to other radiology residents of similar advancement. In addition to the monetary stipend, petitioner received malpractice insurance and two weeks of vacation during her 1977 residency. Petitioner routinely worked 8 to 12 hours per day, 5 to 6 days per week. Her attendance at the hospital was required. In addition to her regular working hours, petitioner was on call to perform angiograms *495 at night on an emergency basis. Petitioner's duties as a medical resident at the University of Minnesota Hospital included the diagnosis from radiological materials while under staff supervision, the prescribing of medicine for patients prior to the performance of angiograms, the performance of angiograms and angiography, and the examination of patients prior to radiology procedures. At trial petitioner testified that she, in conjunction with others, performed approximately two out of the approximately five angiograms done each day at the hospital. In addition, her duties included conference presentations at which the results of angiograms were interpreted Petitioner attended patients in conjunction with other doctors, residents, and fellows. However, she was never assigned sole responsibility for any patients. All of her reports were countersigned, and the hospital could not charge any professional fees on the basis of her work. In addition to her clinical duties, petitioner performed research consisting primarily of angiograms on animals. Petitioner spent approximately 50% of her time at the hospital engaged in research activities. A normal workday for petitioner consisted *496 of the performance of clinical services followed by or interspersed with research in the animal lab. In addition to her clinical and research functions, petitioner wrote papers based on angiograms conducted at the hospital for publication in medical or radiology journals. She also attended classes necessary toward her Masters of Science degree in radiology. On her 1977 individual Federal income tax return, petitioner excluded the entire $16,138.00 from income as a "fellowship scholarship". Respondent partially disallowed the exclusion [6] on the ground that the stipend payments were compensation for services and were not a scholarship or fellowship grant excludable under section 117. OPINION Section 117(a) excludes from gross income amounts received as a scholarship or fellowship grant. Section 1.117-4(c), Income Tax Regs., provides, however, that amounts paid as compensation for employment or primarily for the benefit of the grantor shall not be considered as scholarship *497 or fellowship grants. The validity of this regulation has been specifically upheld by the Supreme Court. Bingler v. Johnson,394 U.S. 741, 751 (1969). In determining whether petitioner's stipend from the University of Minnesota qualifies under section 117(a), the critical test is whether petitioner was paid to work or to study. Dietz v. Commissioner,62 T.C. 578, 584 (1974). We hold that petitioner was paid to work and that the payments received by her represent compensation rather than a disinterested grant with no expectation of any substantial quid pro quo from the recipient. Bingler v. Johnson,supra; see also Brubakken v. Commissioner,67 T.C. 249 (1976); Rosenthal v. Commissioner,63 T.C. 454 (1975). The University of Minnesota and the hospital received a substantial benefit from petitioner's performance of her duties. Considering the extent of petitioner's duties and the number of hours she worked, it is apparent that her clinical services contributed to the hospital's providing of patient care. Furthermore, as petitioner herself noted at trial, her publication of papers based on *498 her research at the hospital contributed to the university's prestige. The fact that petitioner's clinical performance was subject to supervision or countersignature by other physicians does not detract from our conclusion that her services were valuable to the hospital. Brubakken v. Commissioner, supra.Nor is this result altered by petitioner's motivation in entering the University of Minnesota program for the purpose of furthering her education and training. Personal motives do not change the facts that services were rendered and the hospital received the benefit of those services. Parr v. United States,469 F.2d 1156 (5th Cir. 1972). [7] The fact that, in addition to the hospital receiving benefits, petitioner also received substantial benefits as a result of her residency is not determinative. Proskey v. Commissioner,51 T.C. 918 (1969). In addition to the nature and extent *499 of petitioner's services, the nature of the stipend itself reinforces our conclusion that the payments were compensatory. The size of the annual stipend, $16,138.00, is sufficiently large to suggest wages rather than scholarship. More importantly, the amount of the stipend was determined by the number of years of prior residency training petitioner had completed and was equal to amounts paid to similarly experienced radiology residents. The use of these factors in determining the amount of the stipend is indicative of a salary, whereas a scholarship might be expected to include consideration of financial need. Adams v. Commissioner,71 T.C. 477 (1978); Dietz v. Commissioner,supra.
Petitioner's receipt of fringe benefits of the type ordinarily received by employees, specifically vacation and malpractice insurance, further indicates that an employer-employee relationship existed. Weinberg v. Commissioner,64 T.C. 771 (1975). Petitioner's argument that her stipend was not compensatory because she did not receive additional fringe benefits to which other hospital employees were entitled is unconvincing. Our focus is properly *500 on what petitioner did receive and on what she gave in return. Finally, we note that numerous prior decisions by this Court and others have specifically considered the advanced degree residency programs at the University of Minnesota and have found that the stipends involved were taxable wages. See, e.g., Yarlott v. Commissioner,78 T.C. 585 (1982) (on appeal 8th Cir., July 8, 1982); Quast v. United States,428 F.2d 750 (8th Cir. 1970); Johnson v. United States,507 F.Supp. 663 (D.Minn. 1981); Rockswold v. United States,471 F.Supp. 1385 (D.Minn. 1979), aff'd 620 F.2d 166 (8th Cir. 1980). [8] We recognize that each case depends on its own particular facts and circumstances. Zolnay v. Commissioner,49 T.C. 389, 395 (1968). Nonetheless, this steady stream of cases concerning the very circumstances now before us for consideration, as well as the dearth of decisions to the contrary, support our finding that amounts received by this petitioner were compensatory in nature. *501 Petitioner has introduced into evidence Internal Revenue Service Publication 520, "Tax Information for American Scholars in the U.S. and Abroad" (1978 Edition), in an attempt to demonstrate her compliance with the guidelines for exclusion. While enlightening, this publication is not determinative of our decision here. Furthermore, nothing therein is inconsistent with our decision. The publication itself states: "Payments that represent compensation for past, present, or future services performed by you are not excludable from gross income as scholarship or fellowship grants." I.R.S. Pub. 520 (1978 Edition) at 2. We have considered petitioner's other arguments and find them unpersuasive. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year in issue.↩
2. Pursuant to Rule 91(f), Tax Court Rules of Practice and Procedure↩, stipulation occurred pursuant to our order dated September 15, 1982, which accepted as established for purposes of this case the facts and evidence as set forth in respondent's proposed stipulation of facts.
3. Petitioner's residency did not end as of June 30, 1977, but continued until April 1978. However, the source of funding was switched after June 30, 1977, and petitioner was thereafter paid from a National Research Service Award from the National Institute of Health. This award covered the period between July 1, 1977, and February 15, 1978, and provided payment in the amount of $6,800.04 during the taxable year 1977. However, it is undisputed that this amount is excludable from gross income under section 117, pursuant to the Revenue Act of 1978, Pub. L. No. 95-600, 92 Stat. 2810, § 161(b) (1978). Therefore, only the amounts received by petitioner during the first half of 1977 are here in issue.↩
4. See note 3, supra.↩
5. A United States Public Health Training Grant is not a National Research Training Award and, therefore, is not subject to the statutory exclusion explained in note 3, supra.↩
6. A portion of the exclusion was allowed, as explained in note 3, supra.↩ The disallowance relates only to the portion of petitioner's stipend funded by the United States Public Health Training Grant.
7. See also numerous Memorandum Opinions of this Court, e.g., Herrera v. Commissioner,T.C. Memo. 1979-345; Ulvestad v. Commissioner,T.C. Memo. 1979-60; and Hof v. Commissioner,T.C. Memo. 1979-55↩.
8. See also Nino v. Commissioner,T.C. Memo. 1980-204; Rogers v. Commissioner,T.C. Memo. 1980-171; Ulvestad v. Commissioner, supra;Hof v. Commissioner,supra;Eckes v. Commissioner,T.C. Memo. 1978-192↩.