**Mohamed EL DEEB and Farida A. Tawfik, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 84–1977.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1985.

Decided July 2, 1985.

* The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. T.C. Memo. 1984–205.

facts are "ultimate" facts or "subsidiary" facts. Fed.Rules Civ.Proc.Rule 52(a), 28 U.S.C.A.

Geoffrey C. Lyon, Minneapolis, Minn., for appellants.

Teresa McLaughlin, Washington, D.C., for appellee.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and REGAN,* Senior District Judge.

REGAN, District Judge.

Mohammed El Deeb and Farida A. Tawfik appeal from a decision of the United States Tax Court[1] that certain payments received by El Deeb while he was a candidate for a Master of Science in Dentistry Degree at the University of Minnesota were taxable income and were not excludable from income under 26 U.S.C. § 117(a) as scholarships or fellowship grants.[2] We affirm.

El Deeb was admitted to the Master of Science in Dentistry (MSD) degree program at the University of Minnesota during the fall of 1976. In or about July, 1977, El Deeb began to receive financial aid from the University in the form of a "twenty-five percent dental fellowship." This fellowship provided him with an annual stipend in the amount of $3000. El Deeb had begun the MSD program in the fall of 1976 at his own expense and had received no financial assistance until this time.

At some point in early 1978, El Deeb began to receive additional financial assist-

2. Farida A. Tawfik was included in this action solely by reason of her filing a joint income tax return with Mohamed El Deeb.

ance as a result of his appointment to a half-time research assistant position. This position was funded through a grant provided to the University by the National Institute of Dental Research. Pursuant to this appointment, El Deeb received $6,153 in 1978 and $4,674 in 1979. As a research assistant, El Deeb also received certain benefits: 1) he and members of his immediate family paid lower in-state tuition rates; 2) he was eligible for workmen's compensation benefits; 3) he was provided with shared office space; and 4) he was entitled to certain formal procedures governing grievances and dismissals. As a research assistant, El Deeb was paid through the regular employee payroll channels at the University and Federal taxes were withheld from his checks.

The course of study in the MSD program consisted of four principal areas: research, including preparation and defense of a thesis; teaching; clinical work; and courses. Academic credit was awarded for all required research, clincial work, and courses, but not for teaching.

The Tax Court separately considered the two types of payments received by El Deeb. The Tax Court found that the primary purpose of the twenty-five percent dental fellowship paid to El Deeb was to compensate him solely for his teaching responsibilities in the MSD program. The Tax Court found these indicia of compensation in connection with the fellowship: 1) neither the award nor the amount of the fellowship was based on El Deeb's financial need; and 2) academic credit was singularly denied for the teaching component of the program. The Tax Court also found that El Deeb had failed to adduce any evidence to show that his teaching responsibilities were either insubstantial or were intended principally to benefit him in his study.

The Tax Court then considered the research assistant stipend. The Tax Court found that the primary purpose of the research stipend was to compensate El Deeb for services rendered to the university. In evaluating the stipend, The Tax Court held

that the MSD program must be viewed as a unitary whole. In so viewing the program, the Tax Court found: 1) that each of the four components of the MSD program was an integral part of the whole; 2) that satisfactory, concurrent completion of each of the four components of the MSD program was a prerequisite for continuation in the program and for eventual receipt of the MSD degree; and 3) that continued funding of the research assistantship was predicated upon satisfactory participation in each of the four components of the program. In evaluating the research assistant stipend, the Tax Court considered all services that El Deeb was required to perform in the program, whether clincial, teaching, research, or academic. The Tax Court found El Deeb's activities fell within the ambit of *Yarlott* [3]. The Tax Court specifically rejected the University's characterization of the primary purpose of the research assistantship as being a means of providing thesis related research for the benefit of the student. The Tax Court found the research assistant stipend to be compensation despite the fact that El Deeb required more clinical supervision than others in the program. The Court nonetheless found El Deeb's services to be of substantial value to the University despite his need for such additional supervision. The Court found that his need for additional supervision diminished the value of his services to the University, but that the diminished value of his services was adequately reflected in the lower relative compensation received by El Deeb.

In reviewing the decision of the Tax Court, we are guided by the following principles. First, the Tax Court must consider the evidence as a whole. *Yarlott v. Commissioner of Internal Revenue, supra*, n. 4 at 441; *Rockswold v. United States*, 620 F.2d 166, 168 (8th Cir.1980); *Leathers v. United States*, 471 F.2d 856, 861 (8th Cir.1972), *cert denied*, 412 U.S. 932, 93 S.Ct. 2754, 37 L.Ed.2d 161 (1973). Second, whether payments may be exclud-

---

**3.** *Yarlott v. Commissioner of Internal Revenue,* 717 F.2d 439 (8th Cir.1983).

ed from income under 26 U.S.C. § 117 is a question of fact to be resolved by the finder of fact and should not be disturbed on appeal unless found to be clearly erroneous or not supported by substantial evidence. *Yarlott, supra* at 441; *Duffey v. Commissioner of Internal Revenue,* 677 F.2d 38, 39 (8th Cir.1982); *Mizell v. United States,* 663 F.2d 772, 775 (8th Cir.1981), *reh'g en banc denied* 669 F.2d 552 (1982); *Rockswold, supra* at 169; *Leathers, supra* at 858. Third, this factual determination requires analysis of the facts in light of the controlling statute, the applicable regulations,[4] and existing case law. *Mizell, supra* at 774; *Rockswold, supra* at 168–9. Fourth, the clearly erroneous rule applies to the Tax Court's findings of fact whether these facts are "ultimate" facts or "subsidiary" facts. Federal Rule of Civil Procedure 52(a); *Pullman-Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *Yarlott, supra* at 442.

We agree that, in the present case:

Although the issue is a close one, and although the evidence would have sustained a finding either in favor of or contrary to the taxpayer, we cannot conclude that the findings of the tax court are clearly erroneous. *Yarlott, supra* at 443.

■ Applying the foregoing considerations, we hold that the findings of the Tax Court that the dental fellowship and the research assistant stipend were taxable income are factual findings that are based on substantial evidence and are not clearly erroneous. Accordingly, we affirm the decision of the Tax Court.[5]

---

**4.** See Treasury Regulations Section 1.117–3 et seq.

**5.** We decline appellants' invitation to adopt a new "bright line" test. We find the amounts paid El Deeb to be taxable compensation under either the "primary purpose" test or the *"quid pro quo"* test.