ROGER H. SMITH AND JANE A. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 26959-84.
United States Tax Court
T.C. Memo 1986-274; 1986 Tax Ct. Memo LEXIS 335; 51 T.C.M. (CCH) 1348; T.C.M. (RIA) 86274; July 3, 1986. Jane A. Smith, pro se. Gail K. Gibson, for the respondent. *336 GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by a statutory notice of deficiency dated April 25, 1984, determined a $2,278 deficiency in petitioners' 1981 Federal income tax. Petitioners resided in Minnetonka, Minnesota, at the time of filing their petition in this case. The parties have resolved all adjustments set forth in the statutory notice, with the exception of a $7,272 item. The issue presented is whether the amount petitioner [1] received from the University of Minnesota is includable in income or is a scholarship or fellowship grant within the meaning of section 117(a). [2]
Petitioner, along with her husband, Roger H. Smith (who was employed primarily as a minister by the Unitarian Universalist Church of Minnetonka), filed a joint Federal income tax return for 1981 reflecting, among other items, $7,272 as payment from the University of Minnesota *337 (University) during the time that petitioner was enrolled in a Master of Science program (Program) at the University, but excluding the same from income as a scholarship or fellowship grant. Petitioner received her undergraduate B.S. in Zoology from the University of Texas in 1959. During the next 20 years, petitioner worked at various times and locations as a researcher with emphasis on the study of cells and cell development. Early in 1979, petitioners moved from Berkeley, California, to Minnesota to enable petitioner to study with Dr. C. E. Green, a professor at the University, because of his expertise in petitioner's specialized area of cellular research. Petitioner had been working on a theory she had conceived concerning cell development. She wished to continue her work on the theory at the University. [3]
Petitioner sought to enroll in the Program at the University to serve two major purposes: (1) Complete work on her theory as part of her Master's thesis and (2) attain a Master of Science degree in Plant *338 Physiology. When she arrived in early 1979, however, it became apparent that the Program was not available to her. Accordingly, from March 1979 to September 1980, she enrolled in non-degree courses with Dr. Green, at the same time working as a research employee at the University. During this time, petitioner worked on her own theory when her schedule permitted, and negotiated with the University to obtain graduate status. [4]
*339 After being denied entrance to the Program because of the lack of available University funding, petitioner approached Dr. Green with her problem. In the spring of 1980, Dr. Green arranged with two other professors to transfer amounts from other research to allow petitioner to work on her theory, as follows: C. E. Green
$3,636
B. G. Gengenbach
1,818
I. Rubenstein
1,818
[5] $7,272
Besides being funded separately, the terms of petitioner's graduate assistantship varied from the general program in that she was not required to do any teaching or research on University projects and, in fact, did neither. During the first part of her program, petitioner spent the majority of her time studying because she had been away from scholastic situations for about 20 years and she found study and classroom preparation to be difficult. Petitioner then was permitted to work solely upon the subject of *340 her thesis, which consisted of the proof of her own theory, which was not an established University research project. Petitioner wrote her thesis during the summer and fall of 1981 and completed her course work during the winter of 1982, thus fulfilling the Program's degree requirements. The University published her thesis, and Dr. Green was listed as a coauthor. Petitioner received a Master of Science degree on March 20, 1982. The University's treatment of petitioner changed after petitioner began the Program. The University generally did not treat petitioner as an employee, although the payments received were issued from the Payroll Division of University Personnel and a W-2 was issued to petitioner. The University stopped paying the medical plan, and other employee benefits petitioner had received when she performed research work for the University prior to entering the Program. Petitioner contends that the payments from the University are scholarship or fellowship grants within the meaning of section 117(a) and not includable in income. Respondent argues that the payments are taxable as income because they were in exchange for services rendered. OPINION Section 117(a) *341 excludes from gross income amounts received by an individual as a scholarship or fellowship grant. [6] Scholarships and fellowship grants are defined as amounts paid to an individual to aid in the pursuit of study or research. Section 1.117-3(a), (c), Income Tax Regs. Amounts which represent either "compensation for past, present, or future employment services" or which represent "payment for services which are subject to the direction or supervision of the grantor" are not considered to be scholarships or fellowship grants. Sec. 1.117-4(c)(1), Income Tax Regs. However, [n]either the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant. Section 1.117-4(c)(1), Income Tax Regs. In Bingler v. Johnson,394 U.S. 741, 751 (1969), the Supreme Court sustained the validity of these regulations, as comporting with the ordinary understanding of scholarships and fellowships as "relatively disinterested, 'no strings' *342 educational grants, with no requirement of any substantial quid pro quo from the recipients." Section 117(b)(1) limits section 117(a) (the general exclusion) in cases of individuals who are candidates for degrees. [7] But this limitation, and the exception contained therein, are applicable only if the payment in question first has been found to constitute a scholarship or fellowship grant. Reese v. Commissioner,45 T.C. 407, 413 (1966), affd. per curiam 373 F.2d 742 (4th Cir. 1967). *343 The test to determine whether a payment is a scholarship or fellowship grant is whether the primary purpose underlying the payment is to educate the recipient or whether it is to compensate him for services rendered, and this determination is a question of fact. Section 1.117-4, Income Tax Regs.; Yarlott v. Commissioner,78 T.C. 585, 595 (1982), affd. 717 F.2d 439 (8th Cir. 1983). In making this determination, the focus is on the primary purpose of the grantor in making the payment. See Fisher v. Commissioner,56 T.C. 1201, 1214 (1971). Petitioner bears the burden of proof that the amounts received were scholarships or fellowship grants. Olick v. Commissioner,73 T.C. 479, 486 (1979); Rule 142(a). Accordingly, we first consider whether the monies paid to petitioner were intended primarily as payment in return for her services or whether they were intended to furnish her with an opportunity to further her education for her own benefit. We conclude that the monies paid to petitioner were paid primarily for the purpose of allowing petitioner to further her education through developing her theory. We rest our conclusion *344 on several factors. First, petitioner worked solely on her studies or her theory during the time in question. The University did not receive a direct substantial benefit from petitioner's research. Petitioner neither taught at the University nor did research on any University project. Furthermore, there is no indication that petitioner was required to publish her findings, and in fact petitioner submitted her thesis after her stipend ran out. [8]
Additionally, petitioner's stipend was funded from monies originally designated to be used for University projects. After petitioner was told that all University funds for the year in question had been otherwise allocated, Dr. Green and two other professors each contributed funds from their budgets, so that petitioner could continue her work. [9]
*345 Viewing the record as a whole, we conclude that the primary purpose of the payments in question was to allow petitioner to continue her research. [10]
On brief, respondent cites four cases concerning alleged scholarship or fellowship grants from the University in which we have found such payments to be taxable as income. [11] Respondent maintains that this case is indistinguishable. We disagree. In each *346 of the cited cases, we determined that the University received a quid pro quo in exchange for the payments made to petitioner. [12] We have found no such quid pro quo present here. Furthermore, although the parties did not address this issue directly, we conclude that the limitation specified in section 117(b) is inapplicable, since the research done by petitioner was not in the nature of part-time employment. [13]Section 1.117-2(a), Income Tax Regs.
*347 Accordingly, Decision will be entered under Rule 155.
Footnotes
1. "Petitioner," when used in the singular, refers to Jane A. Smith. ↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended for the taxable year in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Petitioner pointed out that the University was one of the few that had appropriate laboratory equipment and cell culture development to facilitate her research.↩
4. The University handbook describes general policies and procedures concerning graduate assistantships, and directs that specific inquiries concerning assistantships be made to the individual departments. According to the handbook, the intended role of the "graduate assistants," fulfills a dual function: to provide "the University with * * * instructional and research staff * * *" and to provide graduate students professional experience. The handbook distinguishes between graduate assistants whose "tasks * * * are part of [their] degree requirements" and those "employed and paid to handle specific assignments in addition to those required by the degree." (Emphasis added.) Furthermore, the handbook distinguishes between various kinds of graduate assistantships, including research assistants and teaching assistants and associates. Research assistants are designated as either project assistants or research assistants. Project assistants research in non-thesis related areas; research assistants in thesis related areas. The handbook also includes the statement that graduate students may not hold appointments for which there is no monetary compensation.↩
5. These transfers were utilized to admit petitioner to the program with Dr. Green as her advisor. By the time the University had agreed to afford petitioner graduate status, there were no official funds set aside by the Department of Agronomy for graduate students.↩
6. Sec. 117(a) states: (a) General Rule.--In the case of an individual, gross income does not include-- (1) any amount received-- (A) as a scholarship at any educational organization described in section 170(b)(1)(A)(ii), or (B) as a fellowship grant, including the value of contributed services and accommodations; and (2) any amount received to cover expenses for-- (A) travel, (B) research, (C) clerical help, or (D) equipment, with are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.↩
7. Sec. 117(b), in pertinent part, states: (b) Limitations.-- (1) Individuals who are candidates for degrees.-- In the case of an individual who is a candidate for a degree at an educational organization described in section 170(b)(1)(A)(ii), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.↩
8. Although petitioner's research actually resulted in a University published thesis with Dr. Green designated as a coauthor, we do not find this benefit alone as determinative of the compensatory nature of the payments. See Yarlott v. Commissioner,78 T.C. 585, 603 (1982), affd. 717 F.2d 439↩ (8th Cir. 1983).
9. Respondent argues that the record does not support petitioner's contention concerning the funding of her program. We disagree. We find petitioner to be an intelligent, forthright and candid witness, and her testimony, both generally and on this particular point, to be credible.↩
10. The focus of this determination is on the grantor. In determining the identity of the grantor, we look to who selected the recipient and determined her duties. See Fisher v. Commissioner,56 T.C. 1201↩ (1971). Arguably, the grantor here could be either the University or the three professors. It seems clear to us, however, that the primary purpose of petitioner's stipend was to allow her to develop her theory, viewed from either the University or the professors' perspectives. Additionally, we note that the original source of the funds actually used is unclear, and that for the school year beginning September 1980, apparently the only reason petitioner initially was denied admittance to the graduate program was due to lack of available University funds.
11. See El Deeb v. Commissioner,T.C. Memo. 1984-205, affd. 766 F.2d 381 (8th Cir. 1985); Joy v. Commissioner,T.C. Memo. 1984-410; Zimmerman v. Commissioner,T.C. Memo. 1984-207; and Tate v. Commissioner,T.C. Memo. 1984-206↩. 12. In El Deeb,Tate, and Zimmerman, petitioners were required to perform substantial teaching duties, thus alleviating the need for the University to hire other instructors. In Joy,↩ petitioner was selected in order to satisfy the University's staff needs, and petitioner worked more than 20 hours per week on research used in the completion of a University project.
13. We have already determined that the primary purpose of the stipend was to allow petitioner to develop her theory and not as compensation for services rendered. Even if the research done by petitioner were regarded as part-time employment, we note that respondent does not contest that the thesis research done by petitioner was a requirement of the degree she obtained. Reese v. Commissioner,45 T.C. 407, 414 (1966), affd. per curiam 373 F.2d 742 (4th Cir. 1967); Chen v. Commissioner,T.C. Memo. 1979-407↩.