PATRICK G. ZIMMERMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zimmerman v. Commissioner
Docket No. 2204-82.
United States Tax Court
T.C. Memo 1984-207; 1984 Tax Ct. Memo LEXIS 465; 47 T.C.M. (CCH) 1617; T.C.M. (RIA) 84207; April 24, 1984. Jon M. Hopeman,Kathryn J. Sedo, James P. Johnson and Erich *466 Koch, for the petitioner. Dale L. Newland, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency in petitioner's Federal income taxes for tax year ended December 31, 1979, in the amount of $391. The sole issue for decision herein is whether petitioner may exclude from his gross income pursuant to section 117, [1] certain payments received by him while he was a candidate for a doctoral degree and was serving as a teaching associate at the University of Minnesota. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Patrick G. Zimmerman (hereinafter referred to as "petitioner") was a resident of Minneapolis, Minnesota at the time he filed his petition herein. For his tax year ended December 31, 1979, petitioner filed his Federal *467 income tax return with the Internal Revenue Service Center in Ogden, Utah. Petitioner received his undergraduate degree from Marquette University in 1979. During the period here in issue, petitioner was a candidate for a Ph. D. degree in chemistry at the University of Minnesota (hereinafter referred to as "University"), with a specialization in organic chemistry. The requirements for such degree included successful completion of various courses and examinations, proficiency in reading literature in a foreign language, and preparation and defense of a thesis. In addition, as reflected in the chemistry department's general information bulletin for graduate students, "[a]ll graduate students will be required by the Department of Chemistry to have some teaching experience while at Minnesota as a part of their graduate degree programs." For the period between September 16, 1979 and June 15, 1980, petitioner served as a "teaching associate I" in the chemistry department of the University. Petitioner had no teaching experience prior to his enrollment in the Ph. D. program. The position of teaching associate was one of several funded graduate assistant appointments for which a *468 student was eligible upon admission to the University's graduate school. Other such appointments included research or project assistants, teaching assistants and administrative fellows. These graduate assistant positions fulfilled the dual function of providing various units of the University with the instructional and research staff needed to accomplish their educational missions, and offering to the graduate student both financial assistance and the opportunity to gain professionally-related experience. Appointments to such graduate assistant positions were made solely on the basis of academic merit, and without regard to individual financial need. In addition, approximately ten graduate fellowships, awarded on the basis of academic merit, were available annually to students in the Ph. D. program. In the Chemistry Department General Information Bulletin for Graduate Students for 1978-1979, such fellowships were distinguished from graduate assistantships, as follows: This information applies to graduate students in the Department of Chemistrywho hold appointments on the academic junior staff or who have been awarded fellowships or financial aid administered by the department *469 or the Graduate School. Staff appointees will be referred to as "Graduate Assistants" whether the actual position title is instructor, teaching assistant, teaching associate, research fellow, or research assistant; studentssupportedonnonserviceawardswillbereferredtoas"fellows" * * *. [Emphasis added.] As the foregoing language suggests, teaching assistants or associates, unlike recipients of graduate fellowships, were considered by the University to be "academic junior staff" members. The role of such teaching assistants and teaching associates was described in the University's Handbook for Graduate Assistants for the years 1979 through 1981, as follows: A teaching assistant or associate provides assistance in the actual teaching or advising of students in a specified course or courses, under the general supervision of the academic staff. Each department classifies its own teaching assignments according to the level of responsibility required. Duties of teaching assistants, who work under direct supervision of a member of the academic staff, may include grading examinations and reports; supervising and instructing laboratory *470 classes, recitation sections, and intern groups; and preparing examination or class materials. Teaching associates perform these duties and, in addition, may have primary responsibility for course organization, administration, or grading. Outside employment among graduate assistants was discouraged by the University, and graduate assistants received no formal sick or vacation leave. As a graduate assistant with a teaching associate appointment, petitioner received several benefits from the University. First, petitioner paid lower in-state tuition rates, and this privilege extended to members of his immediate family. Second, petitioner was eligible for workmen's compensation benefits. Third, petitioner was provided with assigned office and mailbox space, and keys to the campus chemistry buildings. Fourth, petitioner was entitled to certain formal procedures governing grievances and dismissals. A schedule of annual full-time salary bases applicable to the various graduate assistant appointments was developed each year by the University on the basis, at least in some years, of studies of comparable rates paid in similar institutions. For the 1979-1980 academic year, *471 such rates applied, in ascending order of magnitude, to research assistant, teaching assistant, project assistant, administrative fellow I, teaching associate I, administrative fellow II, and teaching associate II appointments. The same annual full-time salary base applied to all teaching associates throughout the University, with individual variations resulting solely from the percentage of full-time reflected in each teaching associate appointment. Funds for the foregoing graduate assistant appointments, including petitioner's appointment in 1979, were derived from the same fund from which academic staff salaries were derived, the general operation and maintenance fund of the University. Approximately two-thirds of that money was appropriated to the University by the Minnesota legislature, and approximately one-third was derived from other sources, such as tuition. When the legislature appropriated state funds to the University it also set the percentage increase for the base salaries for academic staff.Generally, the same percentage increase was reflected at each level of disbursement, including teaching associates. The president of the University then authorized the disbursement *472 of the money to each college in a budget letter, stating the budget for each college and the foregoing annual full-time salary bases for graduate assistants. Petitioner's appointment to the teaching associate I position, was reflected on an official University form styled "APPOINTMENT, Administrative, Academic, Civil Service, Regular Payroll Employees," dated July 20, 1979. Such appointment provided for a one-half time position at an annual stipend of $5,985. During the academic fall quarter of 1979, which ran from September 16, 1979 until December 31, 1979, petitioner received a portion of this stipend in the amount of $2,327.50, which was disbursed, as were faculty salaries, by means of biweekly checks. Federal income taxes were withheld from each such disbursement. Pursuant to his teaching appointment, during the fall quarter of 1979, petitioner taught Chemistry 3305 Lab 1, Elementary Organic Chemistry Laboratory at the University. This was an undergraduate course for non-chemistry majors, and an introductory course for organic chemistry laboratory courses. Eighteen students were enrolled in this course. At undisclosed times during his service as a teaching associate, *473 petitioner also taught Chemistry 3306 Lab 2, which was an introductory course for non-chemistry majors, and Chemistry 3335 Lab 1, which was an introductory course for chemistry majors. Petitioner's courses were associated with one or more organic chemistry lecture courses taught by professors on the regular chemistry department faculty. As part of his teaching appointment, petitioner was responsible for giving one lecture per week to his students, making any necessary modifications in laboratory experiments, grading the experiments and the students' lab books, being available for consultation with students and checking the laboratories daily.Petitioner's teaching activities during 1979 occupied approximately fifteen to twenty hours per week, including two to three lecture hours, three to five hours of laboratory supervision, three to five hours of preparation, and two to three hours of grading and consultation. In addition, petitioner attended as a student twelve credit hours of graduate level organic chemistry classes per week during the period at issue herein. For purposes of grading petitioner's students' laboratory work, the course professor set up a grading curve reflecting *474 a number of students at each grade level. Petitioner was responsible for grading his students in a manner consistent with this curve, or with securing the professor's approval for any deviations therefrom. Petitioner received neither academic credit nor a grade for his teaching associate work. The teaching performance of all graduate assistants was, however, reviewed and rated quarterly by the course instructor and/or the students, and a consistently poor performance would be taken into account in making reappointments. In December 1979, petitioner was evaluated both by his students and by the faculty of the chemistry department. Petitioner's progress during the first quarter of 1979 was found by the graduate faculty committee to be "entirely satisfactory." As reflected on an official University form styled "Salary Adjustment, Promotion, or Change in Status, Regular Payroll Employees," petitioner was again appointed to a teaching associate I position for the period between September 16, 1980 and June 15, 1981, at an increased stipend level in the amount of $6,403. Determining that the stipend received by petitioner during 1979, in the amount of $2,327.50, did not qualify *475 as an excludable scholarship or fellowship under section 117, respondent on October 30, 1981, determined the foregoing deficiency against petitioner for tax year 1979. OPINION The sole issue for our decision is whether payments received by petitioner as a teaching associate are excludable from his gross income under section 117(a). Section 117(a) excludes from the gross income of an individual any amount received as a scholarship or fellowship grant. In the case of an individual who is a candidate for a degree, this general exclusion is limited by section 117(b)(1). [2] However, such limitation, and the exception contained therein, is only applicable if the payment in question first has been found to constitute a scholarship or fellowship grant. Reese v. Commissioner,45 T.C. 407, 413 (1966), affd. per curiam 373 F.2d 742 (4th Cir. 1967). *476 The terms "scholarship" and "fellowship grant" are not defined in the statute. Section 1.117-3(c), Income Tax Regs., defines "fellowship grant" as an amount "paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research." The regulations define "scholarship" in a similar manner. Section 1.117-3(a), Income Tax Regs.[3]
The test to be applied is whether the primary purpose underlying *477 the payment was to educate the recipient or whether it was to compensate him for services rendered. Yarlott v. Commissioner,78 T.C. 585, 595 (1982), affd. 717 F.2d 439 (8th Cir. 1983); Weinberg v. Commissioner,64 T.C. 771, 776 (1975). Thus, if an amount paid "represents either compensation for past, present, or future employment services," then such amount is not to be considered as an amount received as a scholarship or a fellowship grant for purposes of section 117. Section 1.117-4(c), Income Tax Regs. The validity of section 1.117-4(c), Income Tax Regs., was upheld in Bingler v. Johnson,394 U.S. 741, 751 (1969), wherein the Supreme Court declared: [T]he definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of "scholarships" and "fellowships" as relatively disinterested, "no-strings" educational grants, with no requirement of any substantial quidproquo from the recipients. Our inquiry is accordingly reduced to whether the stipend paid to petitioner was intended primarily to be in return for his services, or whether it was *478 intended to furnish him with an opportunity to further his education for his own benefit. Petitioner bears the burden of proof in this respect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). On this record, which is replete with indicia of a compensatory arrangement, petitioner has failed to meet that burden. The University required petitioner to have "some teaching experience while at Minnesota" as part of his Ph. D. program. Petitioner's appointment as a teaching associate during the period September 16, 1979 to June 15, 1980, fulfilled this requirement, but, significantly, also served the purpose of providing the Department of Chemistry with instructional staff needed to accomplish its educational mission. Such appointment was reflected on an official University form for regular payroll employees, [4] and teaching associates, who were assigned substantial and manifold teaching-oriented responsibilties, were considered by the University to be part of its so-called "academic junior staff." Consistent with such junior staff status, employment outside the University was discouraged *479 [5] and graduate assistants were provided with such perquisites of employee status as offices and mailboxes and keys to the chemistry buildings. Graduate assistants, like petitioner, were eligible for workmen's compensation benefits. [6] Furthermore, graduate assistants, like petitioner, were entitled both to lower resident tuition rates, a benefit which also extended to their immediate families, and to formal procedures governing dismissals and grievances. By contrast, not considered a part of the so-called junior staff were Ph. D. degree candidates receiving graduate fellowships. These awards, which were described in the chemistry department's Bulletin for Graduate Students as "nonservice awards," were available only to ten graduate chemistry students each year, and were awarded based upon academic merit. We believe that the existence of this fellowship program is further suggestive that it was the primary purpose of the service-based teaching associate program to compensate the recipients for teaching services *480 rendered. See Meehan v. Commissioner,66 T.C. 794, 804-805 (1976). [7] In so stating, we are mindful that Ph. D. degree candidates in chemistry receiving such fellowships would presumably need to meet the requirement for their degree to obtain "some teaching experience." There is no evidence herein, however, that "some teaching experience" approaches the substantial teaching services which were explicitly required of graduate assistants of the teaching associate type. [8]
Also consistent with a compensatory purpose is both the source of the funds for petitioner's teaching associate appointment for 1979 and the form of disbursal of such funds. Stipends for teaching associates were derived from the same state funds used to pay academic staff salaries. Percentage increases established by the Minnesota legislature for academic salaries were generally applicable to such stipends. During the tax year in issue, petitioner received a stipend of $2,327.50, in exchange *481 for some fifteen to twenty hours of teaching-related activities per week. Petitioner received his stipend, not in a lump sum, but in biweekly installments, from which the University withheld Federal income taxes. The stipend was increased during the 1980-1981 academic year, when petitioner again served as a teaching associate.
Petitioner states that the skills used and experience gained as a teaching associate were indispensable to the professional success of a teaching associate. The apparent truth of this proposition, however, does not negate the predominance of another purpose of such appointments; that is, providing the University with needed instructional staff. Petitioner relies herein upon Steiman v. Commissioner,56 T.C. 1350 (1971), wherein this Court held excludable under section 117, financial aid received by the taxpayers while they were graduate students studying for doctoral degrees. The award of graduate assistant positions in Steiman, however, was predicated upon the individual financial need of academically qualified students. In the instant case, on the other hand, each graduate assistant within the teaching associate I category was paid *482 at his appropriate percentage of the annual full-time salary base, and appointment to that category was based solely upon academic performance, and not upon financial need. Also unlike the present case, grades for students of the graduate assistants in Steiman were awarded by their supervising faculty members, as were grades for the teaching work of the assistants themselves. Finally, while the evidence in Steiman demonstrated that the taxpayers were paid to study rather than to work, the instant record amply shows the converse of that proposition. [9]
We accordingly hold that petitioner *483 provided substantial teaching services in return for his payments from the University, and that such payments were intended primarily to compensate him for such services. Such payments are therefore includable in petitioner's gross income for 1979. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All statutory references herein are to sections of the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all references to Rules are to the Tax Court Rules of Practice and Procedure, unless otherwise stated.↩
2. Sec. 117(b)(1) provides as follows: SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS (b) Limitations.-- (1) Individuals Who Are Candidates For Degrees.--In the case of an individual who is a candidate for a degree at an educational organization described in section 170(b)(1)(A)(ii), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.↩
3. Sec. 117(a) excludes from gross income only those scholarships received at an educational organization described in sec. 170(b)(1)(A)(ii); that is, an educational organization which normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of students in attendance. Petitioner has failed to demonstrate that the University of Minnesota was such a qualifying organization during the period here in issue. Since sec. 117(a) applies equally to fellowship grants, without reference to sec. 170(b)(1)(A)(ii), however, and since the regulatory definition of such a grant is substantially similar to the definition of a scholarship, it is unnecessary for us to examine the propriety of judicially noticing this missing fact.↩
4. Compare Pozar v. Commissioner,T.C. Memo. 1980-559↩.
5. See Koch v. Commissioner,T.C. Memo. 1979-147↩, and cases cited therein. 6. Compare Langley v. Commissioner,T.C. Memo. 1982-460↩.
7. See also Kopecky v. Commissioner,T.C. Memo. 1968-215↩. 8. We offer no opinion herein, of course, concerning whether or not such fellowship awards would be excludable under sec. 117.↩
9. Closer to the facts of the present case is a Memorandum Opinion of this Court, McKenna v. Commissioner,T.C. Memo. 1979-370, finding compensatory a stipend received by the taxpayer, a candidate for a Ph. D. degree in chemistry, while serving as a teaching assistant, where teaching was a requirement of the degree program, the stipend was awarded without regard to the financial need of the recipient, and the taxpayer was responsible for grading the exams of her students. See also Tate v. Commissioner,T.C. Memo. 1984-206↩, decided on this same date.