MONNA J. AND LELAND S. GROTTE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Grotte v. Commissioner
Docket No. 22793-82.
United States Tax Court
T.C. Memo 1984-461; 1984 Tax Ct. Memo LEXIS 220; 48 T.C.M. (CCH) 976; T.C.M. (RIA) 84461; August 28, 1984. Monna J. and Leland S. Grotte, pro se. Jack Forsberg, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies in petitioners' Federal income tax of $4,167 for 1979 and $5,155 for 1980. The issue for decision is whether amounts received by Monna Grotte during 1979 and 1980, which were not reported on the joint returns she filed with her husband, Leland Grotte, for those years, constitute a scholarship or fellowship within the meaning of section 117. [1]
*221 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners Monna J. Grotte and Leland S. Grotte resided in Minneapolis, Minnesota, at the time they filed their petition. From July 1977 through December 1981, Monna Grotte was a medical fellow specialist at the University of Minnesota and a pathology resident at the St. Paul - Ramsey Medical Center (Ramsey). She worked approximately thirty hours a week for sixteen months at Ramsey during 1979 and 1980. Her work included performing and interpreting bone marrow biopsies and aspirations, interpreting lab results observing and performing bench work in clinical laboratories, and consulting with physicians. Mrs. Grotte worked somewhere besides Ramsey for fourteen of the fifty-four months she was a resident at Ramsey. During 1979 and 1980, she worked eight months at institutions that competed against Ramsey. North Central Laboratories (North Central), one of the competing institutions, paid her $2,000 a month for services which were identical to those she performed at Ramsey. Ramsey made payments to Mrs. Grotte throughout *222 1979 and 1980, even when she was working elsewhere. The payments, which were excluded from petitioners' tax returns, totalled $16,182 in 1979 and $17,169 in 1980. The amounts paid were based on length of service, not financial need, and had state and federal income taxes withheld. Ramsey also provided Mrs. Grotte with medical, life, and malpractice insurance, free meals when on call, labcoats, laundry service, and a two-week vacation each year. OPINION Section 117(a) excludes from income any amount received as a scholarship or fellowship grant. A payment is a scholarship or fellowship grant if the primary purpose underlying the payment is to educate the recipient, not to compensate her for services rendered. Yarlott v. Commissioner,78 T.C. 585, 595 (1982), affd. 717 F.2d 439 (8th Cir. 1983); Weinberg v. Commissioner,64 T.C. 771, 776 (1975). Thus, a scholarship or fellowship is a payment with no requirement of any substantial quid pro quo from the recipient. Bingler v. Johnson,394 U.S. 741, 751 (1969). The petitioners have put great weight on the fact that the payments to Mrs. Grotte continued even when she *223 was working at other medical institutions and that there was no exchange of personnel between those institutions and Ramsey. During the years at issue, two-thirds of her time was spent at Ramsey. This proportion increases if you look at her entire tour of duty with Ramsey. Even looking only at the years at issue, a substantial majority of her time was spent at Ramsey. This is not inconsistent with a conclusion that the payments primarily were compensation for services. Yarlott v. Commissioner,supra.
Petitioners also contend that the purpose of Mrs. Grotte's participation in Ramsey's program was educational. This argument, however, misses the point. Our focus is on Ramsey's reason for making the payments, not on Mrs. Grotte's reason for being in Ramsey's program. Yarlott v. Commissioner,supra.
Finally, petitioners contend that no substantial quid pro quo existed because Mrs. Grotte did not provide consideration for the payments. Petitioners contend she was not involved with patients; her services were not necessary for the operation of the hospital; and she was always supervised. However, these circumstances are not inconsistent *224 with the conclusion that the payments primarily were compensation. Brubakken v. Commissioner,67 T.C. 249, 257 (1976). Indeed, the facts here indicate the payments primarily were compensation. Mrs. Grotte worked for Ramsey approximately thirty hours a week for sixteen months. Moreover, we believe her work was valuable considering North Central paid her $2,000 a month for identical services. We also note that the payments were based on length of service, not financial need. See Yarlott v. Commissioner,supra at 602. Also, Mrs. Grotte received numerous fringe benefits. See Adams v. Commissioner,71 T.C. 477, 487 (1978); Weinberg v. Commissioner,supra at 771, 778. The magnitude of the payments ($16,182 in 1979 and $17,169 in 1980) are indicative of compensation. Yarlott v. Commissioner,supra at 603. Finally, state and Federal income taxes were with-held from the payments. See Adams v. Commissioner,supra;Brubakken v. Commissioner;supra at 259. We have carefully examined all of the cases cited by the parties which involve purported fellowship *225 payments to residents and interns at various hospitals and in order medical programs, including several cases involving many of the same hospitals and institutions in the Minneapolis-St. Paul area which are involved here. One could spend a great deal of time reviewing the various similarities and differences in the facts of those cases and those in this case. The Court has attempted to step back and take a look at the forest rather than all of the trees and it is our conclusion that the payments made by Ramsey to Mrs. Grotte were primarily in compensation for the various services which she rendered for the benefit of Ramsey. [2] Therefore, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect during the years in issue.↩
2. Since we conclude that the payments are not excludable as a scholarship or fellowship, there is no need to consider whether Mrs. Grotte was a degree candidate. See section 117(b).↩